PRESTON COUNTY LIGHT AND POW-ER COMPANY, a corporation, and Preston Public Service Corporation, a corporation, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, Boyce Griffith, its Chairman, Joseph E. Hodgson and Robert L. Stewart, Commissioners thereof, Defendants.

No. 3722.

United States District Court
S. D. West Virginia,
Charleston Division.

March 17, 1969.

Brooks E. Smith, Dailey, Halbritter & Smith, Kingwood, W. Va., for plaintiffs.

C. Donald Robertson, Atty. Gen., of West Virginia, and Fred M. Frisk, Jr., Asst. Atty. Gen., Charleston, W. Va., for defendants.

Before BOREMAN, Circuit Judge, and FIELD and CHRISTIE, District Judges.

PER CURIAM:

The plaintiffs brought this action to enjoin, suspend or restrain the operation and enforcement of an order of the Public Service Commission of West Virginia entered on February 1, 1967, in P.S.C. Case No. 6306. Among other things, the plaintiffs contend that the order of the Commission is confiscatory, deprives them of their property without due process of law, and accordingly is repugnant to the Fourteenth Amendment to the Federal Constitution. Upon the filing of the complaint a district court of three judges was designated and organized as provided by 28 U.S.C.A. § 2281 et seq. In their complaint and briefs, the plaintiffs advance several theories of jurisdiction and relief which we find it unnecessary to consider since we are of the opinion that the provisions of the Johnson Act, 28 U.S.C.A. § 1342, preclude this Court from granting injunctive relief in this case. In considering the jurisdictional proscription of the Act, a brief review of the factual background of this controversy is necessary.

Preston County Light and Power Company, one of the plaintiffs in this action, had provided electric power and telephone service in Preston County, West Virginia, for many years, and was a recognized public utility under the jurisdiction of the Public Service Commission of West Virginia. Although it provided both electric and telephone service, the tariff giving rise to the present proceeding involved only telephone service. On February 7, 1964, Preston County Light

and Power Company and Preston Public Service Corporation, the other plaintiff herein, filed an application with the Public Service Commission of West Virginia pursuant to W.Va. Code ch. 24, art. 2, § 12, for approval of the transfer of all the assets and business of Preston County Light and Power to Preston Public Service Corporation. Since the proposed corporate reorganization of these companies was being litigated by the contesting stockholders in the Circuit Court of Preston County, West Virginia, the Commission, by order of March 1, 1965, deferred action on the application "until the legality and legal consequences of the corporate reorganization plan involved in this proceeding are determined and adjudicated by the Circuit Court of Preston County, West Virginia, in an action there pending where said reorganization is under direct attack and the same parties are involved."

On June 29, 1966, Preston County Light and Power Company and Preston Public Service Corporation, jointly filed with the Commission a revision to the tariff sheet of Preston County Light and Power Company cancelling the prior tariffs and stating increased rates and charges for telephone service to become effective August 1, 1966. This application was designated as P.S.C. Case No. 6306. In an order dated July 25, 1966, the Commission made the two companies respondents to the proceeding, deferred the use of the rates and charges stated therein until November 29, 1966, and set the matter for hearing on October 24, 1966. The purpose of that hearing was to consider the proposed rate increases and also the legal status of the respondents. At the hearing both the companies and the Commission staff were given an opportunity to submit evidence and exhibits before the Commission. The Commission deemed the primary issue to be whether either or both of the companies had appropriate standing to file a tariff request before the Commission.

On February 1, 1967, the Commission entered a final order cancelling the revised tariffs from which order this ac-

tion, as noted above, ultimately arose. That order required the companies to refund to the parties entitled thereto the difference between the rates collected under the revised tariffs [1] and the rates which would have been collected under the prior tariff of Preston County Light and Power Company with interest at six per cent per annum. The Commission noted that although the corporate reorganization case was still pending in the Circuit Court of Preston County, the transfer of the business and assets from Preston County Light and Power to Preston Public Service Corporation had been consummated despite the fact that the Commission's consent to or approval of such transaction had never been given nor the transaction otherwise countenanced as required by W.Va. Code 24–2–12. The specific findings of fact were set forth in the order as follows:

"1. The respondent, Preston County Light and Power Company, having divested itself of its utility business and property, is not entitled to file tariffs for public utility business with this Commission.

"2. Preston Public Service Corporation, having acquired its utility business and property without complying with the mandatory provisions of Section 12, Article 2, Chapter 24 of the Code of West Virginia, is not a *de jure* utility entitled to file tariffs with this Commission."

█ Subsequent to this order, the plaintiffs petitioned the Supreme Court of Appeals of West Virginia for writs of prohibition and mandamus, and for the suspension of the final order of the Commission. By order entered May 29, 1967, the Supreme Court of Appeals of West Virginia denied plaintiffs' petition. The period within which plaintiffs could have petitioned the Supreme Court of the United States for a writ of certiorari lapsed without such a petition having been filed. The plaintiffs contend that their failure to timely file a petition for a writ of certiorari resulted from the fact that they were not informed of the disposition of their case by the Supreme Court of Appeals of West Virginia. They indicated that it was customary for the Clerk of that Court to advise attorneys of the disposition of their cases but that the Clerk inadvertently failed to so advise them in this instance.[2] In any event, against this factual and procedural background the present action was instituted.

The Johnson Act, 28 U.S.C.A. § 1342, provides that the district courts shall not "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and, (2) The order does not interfere with interstate commerce; and, (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State." In considering the application of the Act to the present case, each of the four statutory requirements will be discussed separately.

---

1. While P.S.C. Case No. 6306 was pending, on November 29, 1966, the companies advised the Commission that they proposed to put the rates and charges set forth in the revised tariff sheet into effect on or after December 1, 1966, and filed with the Commission a bond pursuant to W.Va.Code ch. 24, art. 2, § 4, which bond was subsequently approved by the Commission on December 16, 1966.

2. Although such may have been the custom of the Supreme Court of Appeals, it seems inconceivable to us that a lawyer would fail to discover through some means the disposition made by the Supreme Court of Appeals in a case in which the attorney was involved. In any event, lack of such direct notification does not abridge the plaintiffs' right of due process since there is no provision requiring personal notice to litigants of decisions by the Court of Appeals, and since it further appears that the decision in question was read in open court on two occasions, May 29, 1967, and June 5, 1967.

### (1) Jurisdictional Basis

█ Since the complaint alleges that the order entered by the Public Service Commission of West Virginia on February 1, 1967, in P.S.C. Case No. 6306 violates certain provisions of Articles I and III of the Federal Constitution, as well as the Fifth Amendment and the due process clause of the Fourteenth Amendment to the Constitution, it is apparent that Federal jurisdiction is based on such alleged repugnance of the order to the Federal Constitution and, accordingly, the requirement of Subsection (1) of the Act is satisfied.

### (2) Interstate Commerce Interference Issue

The second condition of Section 1342 requires that the order not interfere with interstate commerce. If the order is found to interfere with interstate commerce, the case is outside the scope of the statute and the jurisdiction of the Federal court can be exercised unless it is precluded or declined for some other reason.

While it cannot be questioned that telephone messages passing from one state to another constitute interstate commerce, it is more difficult to ascertain whether a particular order of the Public Service Commission relative to a corporation which provides general telephone service constitutes an "interference" with interstate commerce.

In support of their contention that no interference with interstate commerce is involved in this case, the defendants rely upon General Telephone Company of Southwest v. Robinson, 132 F.Supp. 39 (E.D.Ark.1955). In that case a rate increase was denied to a plaintiff telephone company which supplied service to customers in both Arkansas and Texas. Suit was instituted in the District Court of Arkansas by the telephone company, charging that the denial of the rate increase amounted to the confiscation of its property without due process of law. The defendant members of the Arkansas Public Service Commission invoked the Johnson Act and moved to dismiss the complaint. The Court, upon finding that the Arkansas Commission's order effected no confiscation nor other interference with interstate commerce, agreed with defendants' contention that Federal jurisdiction was precluded by the Act.

Similarly, a three-judge district court held that there was no interference with interstate commerce involved in the case of Kansas-Nebraska Natural Gas Co. v. City of St. Edward, 134 F.Supp. 809 (D.Neb.1955). In that case the Court stated although the fact that rate prescriptions indirectly and incidentally affect interstate commerce, it does not follow therefrom that they interfere with such commerce. In that case, however, the Court implied that jurisdiction might have been invoked if a rate regulation had been so administered as to result in confiscation since such administration would result in a direct burden upon and a resultant "interference" with interstate commerce.

█ These two cited cases seem to stand for the proposition that, in the context of the Johnson Act, mere inadequacy of a local rate prescribed by competent authority does not per se constitute interference with interstate commerce. There is, however, apparently no established rule as to what degree of effect on interstate commerce is sufficient to constitute an interference therewith. To say that the degree of interference must meet the limit of confiscation of property begs the question, since there are no well-defined guidelines of the degree of effect that amounts to confiscation. Each case must necessarily be dealt with on its own facts and circumstances. Assuredly, if the rates involved in the present case were found to directly interfere with interstate commerce by being confiscatory or otherwise, the Johnson Act would, of course, not be applicable.

However, since the issue of confiscation has been previously determined in this case by the Supreme Court of Appeals of West Virginia, it is suggested

that this determination is now res judicata in this Court and further inquiry on this issue is neither necessary nor appropriate. In their petition to the Supreme Court of Appeals of West Virginia regarding this controversy, plaintiffs alleged that the order of the Public Service Commission violated the due process clause of the Fourteenth Amendment since the effect of the order was to continue in effect rates which were confiscatory in nature.

The West Virginia Court ruled that plaintiffs had presented no grounds for relief. Its order noted that all of plaintiffs' alleged grounds for relief, and arguments in support thereof, had been considered by the Court. By its order the Supreme Court of Appeals of West Virginia decided that the subject order of the Public Service Commission did not result in confiscatory rates being imposed or continued upon the plaintiffs, and that the plaintiffs' Fourteenth Amendment rights were not being abridged.

■■ Since a three-judge federal district court does not sit as an appellate tribunal to review the determination of state courts on federal questions, Monongahela Connecting R. R. Co. v. Pennsylvania Public Utility Commission, 253 F.Supp. 50 (W.D.Pa.1966); West Virginia Motor Truck Ass'n v. Public Service Comm'n, 123 F.Supp. 206, 216 (S.D.W.Va.1954), aff'd, 348 U.S. 881, 75 S.Ct. 125, 99 L.Ed. 693 (1954), the issue of confiscation must be considered adjudicated by the final order of the West Virginia Supreme Court. That the doctrine of res judicata applies in situations such as this is well established. West Virginia Motor Truck Ass'n v. Public Service Comm'n, supra; Wilke & Holzheiser, Inc. v. Reimel, 266 F.Supp. 168 (N.D.Calif.1967). Since it has been so determined that there was no confiscation of plaintiffs' property, the order of the Commission does not interfere with interstate commerce and, accordingly, it is our conclusion that the second condition of the Johnson Act is met.

*(3) Reasonable Notice and Hearing Issue*

The phrase "reasonable notice and hearing" under the Johnson Act was considered in the case of Mississippi Power & Light Co. v. City of Jackson, Miss., 9 F.Supp. 564 (S.D.Miss.1935), and the Court construed these words to be used in the sense of "due process of law," the vital elements of which were referred to as a hearing before judgment and the full opportunity to present all the evidence and arguments which the party considered appropriate.

In the present case, the plaintiffs contend that the Public Service Commission made a finding on the issue of the legality of the transfer of the Power Company's properties to the Preston Public Service Corporation without according them reasonable notice of the investigation or consideration of such issue.

As heretofore noted, the Commission's order of March 1, 1965, deferred action on the application for approval of the transfer of the assets and business from Preston County Light and Power to Preston Public Service Corporation until the controversy relative to the corporate reorganization plan was adjudicated by the Circuit Court of Preston County, West Virginia. Thereafter, incident to the joint application filed by the plaintiff corporations with the Commission on June 29, 1966, seeking the subject rate increases, it developed that Preston County Light and Power had transferred its utility business and assets to Preston Public Service Corporation subsequent to the order of March 1, 1965. This transfer was made by the two corporations in the full knowledge that there had been no adjudication of the issues by the Circuit Court of Preston County, and without complying with the mandatory provisions of W.Va. Code 24–2–12. In the light of these disclosures, the Commission ordered a hearing relative to both the rate increases and the legal status of the two corporations in the rate proceeding.

■ In ordering and conducting the hearing on these two issues, the Public

Service Commission was exercising its authority and discharging its responsibility to determine whether either party petitioning for rate increases had the right to do so under the applicable statutory law of West Virginia. It appears that this question of "standing" is one of importance to be determined in all cases brought before the Commission, and the fact that the Commission had theretofore seen fit to defer action on the approval of the transfer of assets pending the outcome of the Preston County litigation did not and could not constitute a waiver of the Commission's statutory responsibility incident to the 1966 application for the rate increases. The plaintiff corporations should have been aware of the Commission's statutory obligations, and in fact it would appear that they were aware of them since they deemed it advisable to file a joint application for such rate increases. To us the record clearly demonstrates that the plaintiffs had notice of the issues which the Commission proposed to hear and were given a full opportunity to present appropriate evidence and arguments to the Commission on these issues. Accordingly, it is our conclusion that the Commission's order of February 1, 1967, was made "after reasonable notice and hearing" within the meaning of Subsection (3) of the Johnson Act.

#### (4) State Court Remedy Issue

The procedures available in West Virginia for judicial review of final orders of the Public Service Commission of West Virginia are set forth in W.Va. Code ch. 24, art. 5, § 1 (Michie 1966). It provides as follows:

"Review of final orders of commission.

"Any party feeling aggrieved by the entry of a final order by the commission, affecting him or it, may present a petition in writing to the supreme court of appeals, or to a judge thereof in vacation, within thirty days after the entry of such order, praying for the suspension of such final order. The applicant shall deliver a copy of such petition to the secretary of the commission before presenting the same to the court or the judge. The court or judge shall fix a time for the hearing on the application, but such hearing, unless by agreement of the parties, shall not be held sooner than five days after its presentation; and notice of the time and place of such hearing shall be forthwith delivered to the secretary of the commission, so that the commission may be represented at such hearing by one or more of its members or by counsel. If the court or the judge after such hearing be of the opinion that a suspending order should issue, the court or the judge may require bond, upon such conditions and in such penalty, and impose such terms and conditions upon the petitioner, as are just and reasonable. For such hearing the commission shall file with the clerk of said court all papers, documents, evidence and records or certified copies thereof as were before the commission at the hearing or investigation resulting in the entry of the order from which the petitioner appeals. The commission shall file with the court before the day fixed for the final hearing a written statement of its reasons for the entry of such order, and after arguments by counsel the court shall decide the matter in controversy as may seem to be just and right."

While a petitioner is not entitled to a "judicial trial" de novo under this provision, see City of Charleston v. Public Service Commission, 110 W.Va. 245, 159 S.E. 38, 40 (1931), the court is empowered to reverse and set aside an order of the Public Service Commission where the order is contrary to the evidence, is not supported by the evidence or is arbitrary or based upon a mistake of law. United Fuel Gas Co. v. Public Service Commission, 143 W.Va. 33, 99 S.E.2d 1 (1957); Charleston Transit Co. v. Public Service Commission, 142 W.Va. 750, 98 S.E.2d 437 (1957). Included within the "mistake of law" criterion for setting aside orders of the Commission

is, of course, the question of whether or not the order is in conflict with either the Constitution of the United States or the Constitution of the State of West Virginia. City of Bluefield v. Bluefield Water Works & Improvement Co., 81 W.Va. 201, 94 S.E. 121 (1917). From the foregoing it clearly appears that the plaintiffs had a "plain" remedy in the State court since the cases delineate the breadth of review and the authority of the Supreme Court of Appeals to affirm or set aside an order of the Commission. With respect to the question of whether or not this remedy was "speedy" as contemplated by the Johnson Act, it is equally clear that the thirty-day period provided by the statute, considered in the context of the other provisions of W.Va. Code 24–5–1, satisfies this particular requirement of Subsection (4) of the Act.

■ Nevertheless, plaintiffs complain that the remedy provided by way of review in the Supreme Court of Appeals is not an "efficient" one since there is no provision for a judicial determination as to both law and facts. As heretofore noted, the review by the Supreme Court of Appeals, while not calling for an independent judgment as to both law and facts, does provide a review in regard to the evidentiary support for the findings of the Commission as well as the correctness of the legal principles applied and conclusions reached by that body. The Supreme Court of the United States has held, in declining jurisdiction on the basis of the doctrine of "comity," that the fact that review of a commission's order is limited to the record taken before the commission "presents no constitutional infirmity," and "whatever the scope of review of Commission findings when an alleged denial of constitutional rights is in issue, it is now settled that a utility has no right to relitigate factual questions on the ground that constitutional rights are involved." Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 348, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951). See also New York v. United States, 331 U.S.

284, 334–336, 67 S.Ct. 1207, 91 L.Ed. 1492 (1947); Railroad Commission of Texas v. Rowan & Nichols Oil Co., 311 U.S. 570, 576, 61 S.Ct. 343, 85 L.Ed. 358 (1941). Contrary to the contention of plaintiffs, this Court is of the opinion that the statutory jurisdiction of the West Virginia Supreme Court of Appeals to review administrative orders is sufficient to satisfy due process requirements as discussed in Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920).

The fact that plaintiffs allowed their time to seek certiorari from the decision of the Supreme Court of Appeals of West Virginia to lapse, and now have no further recourse to judicial review of the Commission's findings poses one further question which is, of course, whether the "remedy" contemplated by the Johnson Act refers to a remedy available at the time of the decision by the administrative agency or to a remedy available at the time the utility seeks relief in the Federal court. If the latter is the critical period contemplated by the Act then plaintiffs do not have a remedy presently available in the courts of the State of West Virginia. However, if the operative period is the date on which the Public Service Commission rendered its decision, then a remedy by way of judicial review was available in the courts of the State and this section of the Johnson Act would be satisfied. In General Telephone Company of Southwest v. Robinson, supra, the Court noted that the period within which the plaintiff could have resorted to the State courts had expired. However, that fact did not persuade the Court that the Johnson Act was inapplicable in that case. Similar conclusions have been reached in cases involving Section 1341 of Title 28 involving actions to enjoin collection of state taxes wherein the district courts are precluded from granting injunctive relief where "a plain, speedy and efficient remedy may be had in the courts of such State." Thus, in Henry v. Metropolitan Dade County,

329 F.2d 780, 781 (5th Cir. 1964), the Court stated:

"The obligation of the federal court is clear from a reading of the Johnson Act. The existence of a remedy in the State court effectively ousts the federal court of jurisdiction, and the initial suit filed by appellant was properly dismissed. The expiration of time in which the state suit might have been brought does not result in the destruction of the plain and simple remedy principle specified in the Johnson Act. To hold otherwise would allow any disgruntled taxpayer to simply wait until the statute of limitations had run in the state courts and then bring suit in the federal court."

The relief that the State court could have afforded in the present controversy was equal to that available in a Federal forum. Such state relief was available to plaintiffs through the writs of prohibition and mandamus, W.Va. Code ch. 53, art. 1, § 1–12, as well as judicial review pursuant to W.Va. Code 24–5–1. If the order was confiscatory, its operation could have been prevented through State court remedies. It therefore seems apparent to us that the plain, speedy and efficient remedy required by the Johnson Act was available to the plaintiffs in the State court. The failure of the plaintiffs to apply for certiorari from the State court decision, whether due to lack of diligence or otherwise, does not warrant a different conclusion on this point.

It has been stated that "the Johnson Act is a restrictive statute and manifests a Congressional intent that in general federal courts should not interfere with rate orders of State and local regulatory bodies." [3] Since we conclude that the four conditions specified in the Act are met in this case, we are precluded from exercising jurisdiction which would interfere with the subject order of the Public Service Commission of West Virginia entered on February 1, 1967, in P.S.C. Case No. 6306.

3. General Telephone Co. of Southwest v. Robinson, supra, 132 F.Supp. at 46.

ORDER

For the foregoing reasons, it is hereby adjudged and ordered by the Court that this action be, and the same is hereby, dismissed.