**GENERAL TELEPHONE COMPANY OF THE SOUTHWEST, Plaintiff,**

v.

**Lewis M. ROBINSON, William W. Berry, and James M. Malone, Individually and Jointly in Their Capacity as Chairman and Members of the Arkansas Public Service Commission, Defendants.**

Civ. A. No. 2956.

United States District Court
E. D. Arkansas, W. D.

June 3, 1955.

**40**

Charles C. Wine, Texarkana, Ark., Don S. Holdridge, San Angelo, Tex., and John Robert Jones, Columbus, Ohio, for plaintiff.

John R. Thompson, Little Rock, Ark., and Chas. M. Conway, Texarkana, Ark., for defendants.

Before VAN OOSTERHOUT, Circuit Judge, and LEMLEY and JOHN E. MIL-LER, District Judges.

LEMLEY, District Judge.

This cause came on for hearing before the Court on May 2, 1955, upon the de-fendants' motion to dismiss the plaintiff's complaint, which motion was submitted upon the complaint and exhibits thereto, memorandum briefs, oral argument and certain documentary evidence introduced in the course of said argument. At the conclusion of the argument on the date aforesaid, the Court, after conference, entered an order sustaining the defendants' motion and dismissing the complaint. At the same time the Court announced that a memorandum opinion would be filed setting forth the reasons upon which said order was based, which opinion follows:

The plaintiff, General Telephone Company of the Southwest, a Delaware corporation engaged in supplying telephone service to patrons in a number of Arkansas cities, including Texarkana, Arkansas, and likewise in the City of Texarkana, Texas and the City of Wake Village, Texas, brought this action to enjoin the enforcement of an order of the Arkansas Public Service Commission, dated December 14, 1954,[1] denying the plaintiff's application for rate increases in the several cities served by it, which application was incorporated in certain tariffs filed with the Commission by the plaintiff on April 15, 1954. The suit was brought upon the theory that the order of the Commission was confiscatory and deprived the plaintiff of its property without due process of law, and was for that reason repugnant to the 14th Amendment to the Constitution of the United States. Upon the filing of the complaint a district court of three judges was organized as provided by 28 U.S.C.A. § 2281 et seq.

The defendants' motion was based on two grounds, namely: that by virtue of the provisions of the so-called Johnson Act, 28 U.S.C.A. § 1342, the Court was without jurisdiction, and alternatively, that even if jurisdiction in its technical sense was present, the Court should, in conformity with the doctrine of comity between the state and federal courts, decline to exercise the same. After con-

1. Rehearing was denied by the Commission on January 13, 1955.

sideration, the Court agreed with the defendants with respect to both of their contentions, which contentions will presently be briefly discussed. Before doing so, however, we shall abstract the essential allegations of the complaint.

Plaintiff alleges in substance that this is a suit of a civil nature in equity and presents a substantial controversy under the Constitution of the United States and under that of the State of Arkansas, and, further, that it is a suit wholly between citizens of different states with an amount in controversy in excess of $3,000; that the Arkansas Public Service Commission is a state administrative body charged by law with jurisdiction over the rates and services of various public utilities, including the plaintiff; that the rates for local exchange telephone service which it is now required to charge under tariffs filed with and approved by the Commission are inadequate to enable the plaintiff to earn a fair return on its properties used and useful in the rendition of local service in Arkansas and in its integrated exchange at Texarkana, which serves not only Texarkana, Arkansas, but also Texarkana, Texas and Wake Village, Texas; that in April of 1954 revised schedules of rates were filed with the Commission, which schedules, if approved, would have allowed it to earn a fair return on its used and useful properties; that the operation of said revised schedules was suspended from time to time by the Commission; that hearings were held in the fall of 1954, resulting in the order here complained of; that said order was erroneous in various respects, which we find it unnecessary to enumerate, and that it has resulted in confiscation of the plaintiff's properties both in Arkansas and in the Texas municipalities served by the Texarkana exchange; that it has no adequate remedy at law, and that it is entitled to injunctive relief.

With respect to the Texarkana exchange, it is alleged that said exchange is so integrated as to permit patrons and subscribers in Texarkana, Texas and Wake Village, Texas, to communicate through said exchange with Texarkana, Arkansas, subscribers, and vice versa, without specific toll charges, and that such communications constitute interstate commerce.[2] It is further alleged that the respective franchises under which plaintiff operates in Texarkana, Arkansas and Texarkana, Texas, contain reciprocal rate provisions which require plaintiff to charge its subscribers on one side of town rates no higher than those charged its subscribers living on the other;[3] that the responsibility for regu-

2. The Cities of Texarkana, Arkansas and Texarkana, Texas, are contiguous and are not physically separated by anything; they are, of course, divided by the Arkansas-Texas state line. Wake Village is, in effect, a suburb of Texarkana, Texas and is an extension of the latter's metropolitan area.

3. Those provisions are found in Section 12 of the respective franchises, copies of which were introduced in evidence during argument. The reciprocity provision contained in the Company's Texas franchise is as follows: "In addition to other obligations hereunder, the Grantee expressly agrees, in consideration of the grant of this Franchise, that in no event shall Grantee have the right to charge a higher rate for telephone services within the City of Texarkana, Texas, than is charged for the same and similar services in the City of Texarkana, Arkansas. It is understood that the purpose of this provision is to prevent discrimination in rates for services of the Grantee between the City of Texarkana, Texas, and the City of Texarkana, Arkansas. In imposing this condition, the City is not waiving, or attempting to waive, any part of its regulatory powers, nor does the Grantee, its successors or assigns, waive any rights which they may have to invoke the action of any regulatory tribunal or court to secure for any reason whatever the right to charge any higher rates in Texarkana, Texas, than is actually at the time being charged in Texarkana, Arkansas. In the event any higher rate is being charged in Texarkana, Arkansas, under any temporary restraining order or bond, then the Grantee, its successors or assigns, shall not have the right to consider that such temporary rate is being charged in Texarkana, Arkansas, but shall charge in Texarkana, Texas, a rate not higher than the

lating telephone rates in Arkansas cities is vested in the defendant Commission, whereas such responsibility in Texarkana, Texas, is vested in the City Council of that City;[4] that the Texarkana exchange operates as a unit serving three distinct cities, and that in considering its problems this Court should view said exchange, the value of its properties, the cost of its operation and other relevant matters upon an "integrated-operating-unit basis". It is next alleged that on January 27, 1953, the United States District Court for the Eastern District of Texas permanently enjoined the City Council of Texarkana, Texas, from enforcing certain rate ordinances prescribing rates in that city differing from those approved at that time by the Arkansas Public Service Commission,[5] and that since that time the rates in Texarkana, Texas, have been those prescribed by the defendant Commission in an order entered on August 25, 1952.[6] It is further alleged that the "only impediment existing against plaintiff's charging fair and reasonable rates in the City of Texarkana, Texas, is constituted by the orders of the Arkansas Public Service Commission disapproving the tariffs filed with such Commission on April 15, 1954, which would have established an increased rate schedule for telephone service for Texarkana, Arkansas and made possible the charging of the same rates in Texarkana, Texas, such rates being no more than adequate to produce a fair return upon the fair value of plaintiff's property used and useful in the rendition of telephone service in Texarkana, Texas, and Wake Village, Texas." It is further averred that the allegedly confiscatory rates now in force "interfere with interstate commerce in that more than 80% of plaintiff's gross investment in the State of Arkansas and the integrated Texarkana exchange is devoted to the rendition of telephone service within the integrated Texarkana exchange (which) is an interstate commerce facility".[7] Other pertinent allegations will be hereinafter mentioned.

As stated, the Commission denied plaintiff's application for re-hearing on January 13, 1955; plaintiff did not seek any review of the Commission's actions in the Circuit Court of Pulaski County, Arkansas, under the provisions of the Arkansas statutes hereinafter mentioned, but filed its action directly in this Court on March 15, 1955, after the time allowed it to resort to the State courts had expired.

the one which would then be in effect in Texarkana, Arkansas, but for such temporary order. Any lower rates granted to the City of Texarkana, Arkansas, shall inure to the benefit of the City of Texarkana, Texas." As indicated, Section 12 of plaintiff's Arkansas franchise is similar and complementary to the section of the Texas franchise just quoted.

4. We are not advised as to what body has the responsibility for fixing rates in Wake Village, but throughout the instant proceedings counsel have drawn no distinction between Texarkana, Texas and Wake Village, and we do not undertake to distinguish between them.

5. A copy of Judge Sheehy's permanent injunction was likewise introduced in evidence; that decree recites that it was rendered upon testimony and upon the admission of the City's attorneys that plaintiff was entitled to injunctive relief as prayed for. Specifically the decree enjoined the City, its Mayor and Aldermen from enforcing or attemping to enforce the schedule of rates prescribed by the ordinance of the Council adopted on April 9, 1946, or from assessing or seeking to enforce against the plaintiff any penalties for failing to charge and collect the rates prescribed by said ordinance, and "from interfering in any way with the plaintiff in charging and collecting fair and reasonable rates and charges for telephone service in Texarkana, Texas, until such time as the defendant City Council shall prescribe fair and reasonable rates and charges".

6. Generally speaking, the rates prescribed by that order are those which are now in force and which the plaintiff claims to be confiscatory.

7. While plaintiff serves ten Arkansas municipalities other than Texarkana, Arkansas, all of such other municipalities are very small towns. Plaintiff also serves numerous cities and towns in Texas other than Texarkana, Texas and Wake Village.

Taking up first the question of jurisdiction, the Johnson Act provides that the district courts of the United States shall not "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making, body of a State political subdivision, where: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and, (2) The order does not interfere with interstate commerce; and (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State."

When the complaint herein is examined in the light of the statute, it is at once apparent that the order here challenged is one affecting rates chargeable by a public utility, made by a State administrative agency, and that federal jurisdiction is based on diversity of citizenship and the alleged repugnance of the order to the federal Constitution. Since it is not contended that the Commission acted without reasonable notice and hearing, we have only to consider whether the order "interferes" with interstate commerce, and whether the remedy which was available to the plaintiff in the courts of Arkansas, had it sought such remedy, was "plain, speedy and efficient". We concluded that said order did not interfere with interstate commerce, and that the procedures available to the plaintiff in the State courts were plain, speedy and efficient, and were fully adequate to protect the plaintiff's federal constitutional rights; hence, this case falls within the category of cases contemplated by the Johnson Act, and we are without jurisdiction.

█ With regard to whether or not the order in question interferes with interstate commerce, it may first be said that, although plaintiff argues to the contrary,[8] we are satisfied that said order did no more than fix rates to be charged the Arkansas subscribers of the Company; while in fixing such rates the Commission considered the value of the plaintiff's Texas properties, such consideration was only for the purpose of determining the rates to be charged the Texarkana, Arkansas, subscribers.

Granting for the sake of argument that the plaintiff is laboring under a confiscatory rate which constitutes an interference with interstate commerce, such interference does not arise from the order of the Commission, but from the fact that by virtue of Section 12 of plaintiff's Texas franchise it is unable to charge rates to its Texas subscribers which would yield it a fair and reasonable return on its investment; but that is a situation with which the Arkansas Commission is not concerned and over which it has no control. As far as the Commission is concerned, there is nothing to prevent the Texas City Council from relieving plaintiff of the franchise provision that has been mentioned and permitting

---

8. Plaintiff contends in this connection that when the Arkansas statute defining the powers and duties of the Commission, Ark.Stats.1947, § 73–203(a), is read in connection with 47 U.S.C.A. § 221(b) (which latter statute prohibits the Federal Communications Commission from fixing rates for integrated telephone exchange service, such as is involved here, where such rates are subject to local regulation, even though interstate commerce may be involved), the defendant Commission had jurisdiction to fix rates for the entire Texarkana exchange, and that it exercised such jurisdiction; and it cites in that connection Southwestern Bell Telephone Co. v. United States, D.C. Mo., 45 F.Supp. 403. We do not agree. The most that can be said of Section 221(b), as construed in the Southwestern Bell Telephone Co. case, supra, is that the rates to be charged in the Texarkana exchange area are to be fixed by the Arkansas Public Service Commission, as far as Arkansas subscribers are concerned, and by the City Council of Texarkana, Texas, as far as Texarkana, Texas, subscribers are concerned. Attention is here called to the fact that Judge Sheehy's decree, previously referred to, did not purport to interfere with the legitimate rate making authority of the Texas City Council, but, on the contrary, specifically recognized that authority.

plaintiff to put into effect compensatory rates in Texas which would relieve it from its alleged burden of confiscation.

Plaintiff argues, however, that, aside from the franchise provision, any effort on its part to charge higher rates in Texas than those charged in Arkansas would amount to an unlawful discrimination. No authority is cited for that proposition, and if the Council, in the exercise of its rate making powers, should see fit to grant to the Company the right to charge higher rates in Texas than those charged by it in Arkansas, which it is not to be presumed that it would refuse to do on a proper showing, we do not see how the Texas subscribers could complain of discrimination on the part of the Company. Such a rate would be the legal rate in Texas and would apply to all Texas subscribers alike. Nor does it appear that in any event different rate schedules on the two sides of town would necessarily be discriminatory or unreasonable; after all, separate municipalities and separate states are involved, and there may well be a number of factors, e. g., variations in tax bases, justifying higher rates in Texas than in Arkansas. As a matter of fact, it seems to us that both the plaintiff and the Texas City Council have recognized in Section 12 of the plaintiff's franchise that a situation might arise which would call for higher rates in Texas than those prevailing in Arkansas.

Turning now to the question of the adequacy of the remedy which was available to the plaintiff in the courts of Arkansas, the pertinent Arkansas statutes, Ark.Stats.1947, §§ 73–233, 234, and 236, provide that a utility dissatisfied with an order of the Commission may petition for a review of such order by the Circuit Court of Pulaski County, Arkansas, that such Court shall consider all of the evidence heard by the Commission, and may affirm the order, or may vacate it, in whole or in part, provided that when such order is so vacated, the Court, in its discretion, may remand the case to the Commission for further proceeding. Said statutes also provide for a stay of the enforcement of the Commission's order upon the giving of bond, and for an appeal, as of right, to the Supreme Court of Arkansas. Of course, any decision of that Court is subject to ultimate review in the Supreme Court of the United States. In City of Ft. Smith v. Southwestern Bell Telephone Co., 220 Ark. 70, 78, 247 S.W.2d 474, 479, the Court, speaking of the scope of review available under the Arkansas statutes, said that it would "examine * * * to see that the order of the Commission does not amount to a confiscation of the property of the Utility, and that no rights under the United States or State Constitutions have been invaded." When the Arkansas statutes, as construed in the case just cited, are compared with the scheme of judicial review provided by the statutes of Alabama, which scheme was held adequate by the Supreme Court in Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, we are satisfied that the remedy available to the plaintiff in the courts of Arkansas was adequate to protect its legitimate constitutional rights, and was "plain, speedy and efficient" within the meaning of the Johnson Act.

Plaintiff asserts that no order that the Arkansas courts could have made would have protected its Texas properties from confiscation; and it argues in that connection that by reason of the reciprocity provisions in the franchises the stay provisions of the Arkansas statutes were not available to it. But in our opinion the franchise provisions, to the extent, if any, that they would have prevented plaintiff from superseding the Commission's order in the Circuit Court of Pulaski County, would equally prevent us from protecting plaintiff by way of injunction; and we are convinced that there is no relief, either preliminary or permanent, which plaintiff could obtain here that it could not have obtained in the State courts, the only difference being in the nomenclature of the relief

granted, which differences would be immaterial.

■■ It must be remembered that Texarkana, Texas, is not a party to this suit, and that no decree which we might render, and no judgment or order which the Arkansas State courts might have entered in proceedings initiated before them by the plaintiff following the Commission's action, would be binding upon said City. Hence, in the absence of a willingness on the part of the Texas City Council to voluntarily accede to such order in favor of the plaintiff as we might enter, or which might have been entered by the Arkansas courts, plaintiff would have to resort to the appropriate courts in Texas, either State or federal, to secure protection for its properties in that State. That plaintiff has an adequate remedy in equity in Texas appears from Judge Kennerly's holding in Northern Texas Telephone Co. v. City of Sherman, D.C.Tex., 4 F.Supp. 554; and, as a matter of fact, the plaintiff utilized such remedy in 1953 when it obtained the injunction heretofore mentioned.

With further reference to supersedeas, we do not think that the quoted provision of the franchises prohibited the plaintiff from staying the Commission's order in the Circuit Court of Pulaski County as far as its Arkansas subscribers were concerned; on the contrary we feel that said provision contemplated that by virtue of a court order or bond, or both, higher rates might come into effect on one side of town than were in effect on the other.[9] It is probably true that no order of supersedeas which might have been entered

by the State court would have, of itself and independent of acquiescence therein by the Texas City Council, affected the rates charged in Texas, but neither would any preliminary or permanent injunction that we might enter. Should we enjoin the Commission from enforcing its order, and should the City Council of Texarkana, Texas, refuse to go along, plaintiff would be required to seek relief against said Council in the appropriate courts in Texas. On the other hand, had the plaintiff proceeded in the Arkansas courts and superseded the order of the Commission, as far as its Texarkana, Arkansas, subscribers were concerned, it would have then been open to it to go into the Texas courts, either State or federal, and to seek an order from such courts requiring the Texas City Council to permit it at least a temporary increase in rates in Texarkana, Texas, pending the final determination of the matter.

As stated, we are satisfied that the Commission's order does not interfere with interstate commerce; but even if we are wrong and in fact have jurisdiction, it does not necessarily follow that such should be exercised.

■ The plaintiff, without resorting to its available State remedies, is asking us to interfere in what is, from a practical standpoint, an essentially local problem, and to overturn the considered judgment of the Commission with respect to a matter within its jurisdiction upon the same evidence which the Commission heard, or upon other evidence not presented to it, and upon which it has had no opportunity to pass. Such being the

---

9. It is at least arguable that a provision in a franchise absolutely prohibiting a public utility from seeking preliminary relief from a confiscatory rate by applying for a temporary injunction or a supersedeas conditioned upon the giving of a good and sufficient bond, would tend to put in jeopardy the utility's ability to perform its public obligations and would be void as against public policy. On the other hand, if such a provision is valid, and if the plaintiff here, by reason of Section 12 of the franchises, could not have superseded the Commission's order at all, its inability in that respect would not have been due to any defect or inadequacy in the remedy provided by the Arkansas statutes, but to the contractual agreement under which the plaintiff is voluntarily operating on both sides of Texarkana. We do not think that a utility can by agreement disable itself from invoking a State remedy otherwise available to it and then come into federal court on the theory that the State remedy is inadequate.

case, and in view of the adequacy of the State remedy, we feel that the doctrine of comity should be applied and the case dismissed even if jurisdiction exists. Alabama Public Service Commission v. Southern Ry. Co., supra; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Gulf, M. & O. R. Co. v. Louisiana Public Service Commission, D.C.La., 120 F. Supp. 250.

■ In support of its position that the doctrine just mentioned should not be applied here, plaintiff argues that when Congress, in passing the Johnson Act, left the federal courts with jurisdiction to enjoin the enforcement of State rate orders which interfered with interstate commerce, it intended not only to preserve such jurisdiction but also that it should be exercised. There is no merit in this contention; the Johnson Act is a restrictive statute and manifests a Congressional intent that in general federal courts should not interfere with rate orders of State and local regulatory bodies. Since in the instant case at least three of the four conditions of the Act have been met, we feel that the situation presented is one to which the rule of comity is peculiarly applicable.

■ Moreover, when consideration is given to 47 U.S.C.A. § 221(b), a part of the Federal Communications Act, which section has been heretofore mentioned in another connection, an added reason is found for declining to exercise our jurisdiction, if any. While it may be doubted that Congress in enacting that section deprived this Court of jurisdiction in this case, it seems clearly evident that by its enactment Congress definitely declared that rates for telephone service in such cases as the instant one should be fixed by the States or by local authorities, and, therefore, this Court in the circumstances presented here should not interfere.

While the time within which plaintiff could have resorted to the State courts has expired, that is the plaintiff's own fault. When plaintiff chose to ignore its State remedies and to bring its action directly in this Court, it assumed the risk that we might ultimately determine that we had no jurisdiction, or that jurisdiction, if present, should not be exercised, and that such determination might be made at a time when the State courts would be no longer open to it. Cf. Chambless v. Cannon, D.C.Ark., 81 F. Supp. 885, 889.

■ Aside from that, we know of nothing to prevent the plaintiff from going back to the Commission and filing a new schedule of rates and putting the same into effect, at least in Arkansas, by posting a bond.[10] It is not to be presumed that the Commission would not give fair and impartial consideration to such a renewed application, and since res judicata does not apply to proceedings before administrative tribunals, plaintiff would not be embarrassed by that doctrine. 42 Am.Jur. "Public Administrative Law", Section 161, p. 519; Grandview Dairy, Inc. v. Jones, D.C.N.Y., 61 F.Supp. 460. Furthermore, although the order in question was entered in December of 1954, it was based upon conditions existing on July 1 of that year; since that time conditions may well have so changed that the Commission might be prompted to grant at this time that which it formerly withheld. Should the plaintiff be unsuccessful in its renewed appeal to the Commission, it could then resort to the judicial remedies provided by the Arkansas statutes, and, if necessary, obtain an ultimate review of the matter in the Supreme Court of the United States.

As stated, an order in accordance with the foregoing has already been entered.

---

10. Ark.Stats.1947, § 73–217, provides for the putting of a proposed rate increase immediately into effect by posting a bond conditioned that the utility involved will make proper refunds to subscribers in the event that increase is finally disallowed. Should such be done by the plaintiff, it would appear open to the plaintiff by timely application to the Texas courts and the giving of a sufficient bond to secure similar preliminary relief with respect to its Texas subscribers.