F. Donald ZUCKER and Harry J. Barton, Individually and on behalf of all members of a class of customers similarly situated

v.

The BELL TELEPHONE COMPANY OF PENNSYLVANIA
and
The Pennsylvania Public Utility Commission.

Civ. A. No. 72-2460.

United States District Court, E. D. Pennsylvania.

March 29, 1974.

Arnold Levin, Freedman, Borowsky & Lorry, Philadelphia, Pa., Lawrence Sager & Sager, Pottstown, Pa., for plaintiffs.

Jerome J. Shestack, Michael J. Mangan, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Philip P. Kalodner, Albert W. Johnson, III, Pennsylvania Public Utility Commission, Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I

### BACKGROUND

Plaintiffs, F. Donald Zucker and Harry J. Barton, seek to bring this action against defendant, Bell Telephone Company of Pennsylvania (hereinafter referred to as "Bell"), and defendant, Pennsylvania Public Utility Commission (hereinafter referred to as the "Commission"), on behalf of themselves and purportedly as representatives of a class comprised of all rate payers of Bell. Plaintiffs summarily assert that this court has jurisdiction pursuant to "the Civil Rights Acts, the United States Constitution, particularly the First, Fifth and Fourteenth Amendments, and the equity powers of the Federal Courts."

On December 3, 1970, Bell, pursuant to Section 308 of the Pennsylvania Public Utility Law, 66 P.S. § 1148, filed with the Commission new tariff sheets and a multipage "Notice" stating the revisions proposed to be made in the rates then in force and the time when the changed rates would go into effect. The tariffs contained a $1.00 per month charge for private number service. In order to determine the reasonableness of the proposed new rates, and in accordance with the Pennsylvania Public Utility Law and the Commission's practice, the Commission suspended the operation of the new rates, and instituted an investigation of them, consolidating therewith for hearing a number of complaints which had been filed with respect to

them. Hearings before the Commission required fifteen days, producing 2,683 pages of testimony and 154 exhibits. After this investigation and hearings, the Commission, *inter alia,* expressly rejected the proposed $1.00 per month charge for private number service and indicated that it would accept a charge of 50 cents per month instead. Therefore, Bell's tariffs filed in conformity with the Commission's December 14, 1971 order, contained private number service at 50 cents per month.

In their complaint, plaintiffs claim that the Commission's order of December 14, 1971, accepting a private number surcharge at a rate of 50 cents per month for each customer is discriminatory against telephone subscribers who do not want their telephone numbers made public. Plaintiffs insist that the aforesaid order denies them equal protection of the laws, invades their constitutional right to privacy, and was made without affording them due process of law. Thus, plaintiffs, in substance, seek an order "permanently enjoining defendants from continuing to violate plaintiffs' rights" and "a refund . . . . for all monies . . . . paid pursuant to the order of the Commission effective December 14, 1971 . . . ."

Defendants Bell and Commission have moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the complaint in this action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support of their motions, both defendants advance the following independent grounds allegedly requiring dismissal of this action: (1) the Johnson Act, 28 U.S.C. § 1342; (2) the exclusive original and primary jurisdiction of the Pennsylvania Public Utility Commission; (3) the doctrine of federal-state comity; and (4) the lack of state action.

For reasons hereinafter set forth, we dismiss plaintiffs' action on the grounds that the court is without jurisdiction over the subject matter by virtue of the provisions of the Johnson Act, 28 U.S.C. § 1342, which limits its federal equity jurisdiction in the area of state rate orders, and on the basis that even assuming the Johnson Act to be inapplicable to this action and jurisdiction otherwise to exist, in its technical sense, pursuant to allegations set forth in plaintiffs' complaint, the court should, in conformity with the doctrine of federal-state comity, decline to exercise its jurisdiction.

## II

## THE JOHNSON ACT

The Supreme Court has admonished against federal equity interference in rate-making cases. Public Utilities Com. v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); Petroleum Exploration v. Public Service Comm'n, 304 U.S. 209, 58 S.Ct. 834, 82 L. Ed. 1294 (1938). See, Tri-State Gen. & Transm. Ass'n v. Public Serv. Comm'n of Wyo., 412 F.2d 115, 119 (10th Cir. 1969), cert. denied, 397 U.S. 1043, 90 S. Ct. 1348, 25 L.Ed.2d 654 (1970). The Johnson Act of 1934, 28 U.S.C. § 1342, is a restrictive statute and manifests a Congressional intent that federal jurisdiction should be seriously curtailed with regard to rate orders of State and local regulatory bodies. City of Meridian, Miss. v. Mississippi Valley Gas Co., 214 F.2d 525 (5th Cir. 1954); DeKalb County v. Southern Bell Tel. & Tel. Company, 358 F.Supp. 498 (N.D.Ga. 1972) aff'd, 478 F.2d 700 (5th Cir. 1973). See 1-A J. Moore, Federal Practice, ¶¶ 0.206, 0.207, pp. 2281–2283.

▆ The Act provides that the district court shall not "enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision where:

"(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State."

Since the conjunction "and" is used as the connecting word between the conditions, it is the general view that all four of the numbered contingencies must be found to exist before the Johnson Act can apply and thereby preclude the court's jurisdiction. The existence of one or more but less than all of the conditions is not sufficient. David v. New York Telephone Company, 341 F.Supp. 944, 947 (S.D.N.Y.1972); United States v. Public Utilities Commission of Cal., 141 F.Supp. 168, 183 (N.D.Cal.1956), aff'd, 355 U.S. 534, 78 S.Ct. 446, 2 L. Ed.2d 470 (1958).

It is clear that the Commission's December 14, 1971 order herein challenged is one affecting rates chargeable by a public utility, Bell. On page 17 of their brief, plaintiffs acknowledge that "[j]udicial interference with rate orders promulgated by state agencies is concededly precluded by the Johnson Act, 28 U.S.C. § 1342." However, plaintiffs insist that the order of the Commission interferes with interstate commerce, and was not made after reasonable notice and hearing. It is further urged that a plain, speedy and efficient remedy may not be had in the Pennsylvania courts.

It appropriate for the court to consider separately the four statutory conditions to the operation of 28 U.S.C. § 1342.

### (1) Basis for Jurisdiction

■ The complaint alleges that jurisdiction arises under "The Civil Rights Acts and the United States Constitution." Plaintiff apparently is asserting jurisdiction pursuant to 28 U.S.C. § 1343(3), and 42 U.S.C. § 1983. The aforesaid statutes require the presence of an act or action which is repugnant to the Federal Constitution before federal court jurisdiction will attach. Here, the first condition is satisfied since jurisdiction is premised on the Constitutional repugnance of the Commission's order authorizing the 50 cent private number surcharge.

### (2) No Interstate Commerce Interference

■ The courts have found that state agency orders applicable to intrastate telephone rates do not interfere with interstate commerce, and that the Johnson Act applies. Preston County Light & P. Co. v. Public Serv. Com'n of W. Va., 297 F.Supp. 759 (S.D.W.Va.1969); General Telephone Company of Southwest v. Robinson, 132 F.Supp. 39 (E.D.Ark. 1955); See, Public Utilities Com. v. United Fuel Gas Co., supra, 317 U.S. at 469, 63 S.Ct. 369, 87 L.Ed. 396; and Kansas-Nebraska Nat. Gas Co. v. City of St. Edward, Neb., 234 F.2d 436, 440 (8th Cir. 1956).

■ Under the particular facts and circumstances of the instant case, involving private number regulation, which is a matter of local concern, we find that in the context of the Johnson Act, the Commission's order of December 14, 1971, with respect to the challenged 50 cents per month private number surcharge, does not interfere with interstate commerce. Accordingly, we conclude that the second condition of the Johnson Act is satisfied.

■ *Reasonable Notice and Hearing*
■ Plaintiffs argue that the December 14, 1971, rate-making order of the Commission has not been made after reasonable notice and hearing and therefore is not subject to the Johnson Act. Plaintiffs insist in paragraph 24 of their complaint that "[n]o individual notice of the filing of said tariff was made, nor were plaintiffs given an opportunity to protest or to be heard prior to the imposition of the Private Number Surcharge."

In his affidavit, plaintiff, F. Donald Zucker, affirms, *inter alia*: "the first

time I was aware that Bell Telephone Company of Pennsylvania . . . . intended to charge me for having an unlisted telephone number was when I received the first bill levying a charge of 50 cents a month for my unlisted telephone number. At that time, the Pennsylvania Public Utility Commission had already approved the new charge. I did not know that Bell had applied to the Utility Commission for the new rate." Plaintiff Zucker further declares: "I did not read in any newspaper account or any published notice in any newspaper of Bell's filing with the Utility Commission for the new unlisted telephone number rate. *At that time I subscribed to the Philadelphia Evening Bulletin and read the paper daily, but I was not notified through that media of the filing or the approval and imposition of the new rate.*" (emphasis added). Plaintiff Barton maintains in his affidavit that he did not know, or understand that he "could in any way protest the rate increase of Fifty Cents."

The numerous exhibits and affidavits submitted by defendants reveal the following:

Pursuant to the requirements of the Pennsylvania Public Utility Law and rules and regulations of the Commission numerous steps were taken to give notice. On December 3, 1970, Bell filed with the Commission tariff revisions together with a "Notice" of the changes they would effect. A copy of the tariff and "Notice" was available for public inspection beginning on December 3, 1970, and continuing through December 29, 1970, at Bell's headquarters and each of Bell's public offices, including its public offices at Pottstown, Pa. and Norristown, Pa., which serve Bell's subscribers in the areas of plaintiffs, Barton and Zucker, respectively. Bell post-

ed in public view at each of the aforesaid public offices placard notices [1] calling attention to the new tariffs and stating that they would be produced for examination upon request. Also, a printed letter over the signature of William S. Cashel, Jr., President of Bell, was sent by first class mail, on December 3, 1970, to each Bell customer. In the first paragraph, the letter indicated that

"[T]he Bell Telephone Company of Pennsylvania has *filed with the Public Utility Commission increases and changes in rates* for local telephone service, including supplemental service, effective February 3, 1971. *The proposed new rate schedules are on file at each of the Company's Business Offices and may be seen upon request.*" (emphasis added).

In addition to the notice requirements of the Public Utility Law and the Commission's rules and regulations, Bell took further steps calculated to inform its customers of the December 3, 1970 tariff filing. Bell distributed to wire services, newspapers, and radio and television stations throughout its territory news releases which resulted in newspaper publicity and radio and television coverage. The following newspapers were circulated in or near the areas where plaintiffs reside, on the dates specified:

(a) Philadelphia "Inquirer"—December 4, 1970;

(b) Philadelphia "Evening Bulletin" —December 3, 1970;

(c) Souderton "Independent"—December 9, 1970;

(d) Honeybrook "Herald"—December 9, 1970;

(e) Reading "Times"—December 4, 1970;

---

I. NOTICE
New Tariffs to become effective
February 3, 1971
covering increases, decreases, and changes in Rates for Local Telephone Service including supplemental equipment and services, have been filed and posted in the offices of this Company and will be produced for examination upon request.

\*

THE BELL TELEPHONE COMPANY OF PENNSYLVANIA

(f) Reading "Eagle"—December 3, 1970;

(g) Quakertown "Daily Free Press" —December 4, 1970;

(h) Coatesville "Record"—December 3, 1970;

(i) Chester County "Daily Local News"—December 3, 1970;

(j) Phoenixville "Republican"—December 3, 1970;

(k) Larsdale "North Penn Reporter" —December 3, 1970;

(l) Norristown "Times Herald"—December 3, 1970.

Bell also furnished Bell's customer contact employees, with detailed information regarding the said tariff filing which was to be given customers who were interested.

A careful review of the record, including the pleadings, exhibits and affidavits, submitted by all the parties, does not indicate that, under the particular facts and circumstances of the instant case involving administrative public utility rate proceedings, plaintiffs were not afforded what actually constituted reasonable notice and opportunity for a hearing complying with minimum standards of due process. Here, Bell filed tariff revisions and a notice of changes with the Commission on December 3, 1970, and simultaneously placed such tariff revisions and notice in all of its public offices for inspection by the public. On the same day, Bell sent to each of its customers a printed letter, over the signature of the president of the Company, stating that Bell had requested the Commission to approve increases and changes in rates for telephone service and that the proposed rate schedules were available to the public for inspec-

tion at any of Bell's business offices. We note that the aforementioned steps undertaken by Bell were in full compliance with the notice requirements of the Public Utility Law [2] and the Commission regulations [3] promulgated thereunder.

■ Plaintiff Zucker acknowledges that he, in fact, "received from Bell a letter dated December 3, 1970", nevertheless he complains, *inter alia,* that the letter did not expressly advise him that he "could present testimony" and "question Bell's witnesses". Plaintiff further claims that he did not actually know and "did not think for a moment" that the statement in the letter revealing Bell's filing for "increases and changes in rates for local telephone service" meant that Bell was, for the first time, filing to charge him for private number service. In the court's view, the notice relating to increases and changes in rates sufficiently apprises a subscriber that a rate may be established for a service previously provided without charge. The fact that plaintiff Zucker, personally, may have misconstrued pertinent language in the letter and adopted an interpretation contrary to its plain import, does not demonstrate any deficiency in the notice under the circumstances set forth herein.

The court must point out that the aforesaid letter was not the plaintiffs' only opportunity for learning of the rate case and for ascertaining that the company was seeking a charge for private number service. While it is maintained by plaintiff Zucker that he "did not read in any newspaper account . . . . of Bell's filing with the Utility Commission for the new unlisted telephone number rate", it is undisputed that the newspapers in the area where each

---

2. 66 P.S. § 1148 provides in relevant part as follows:

"The public utility shall also give such notice of the proposed changes to other interested parties as the commission in its discretion may direct."

3. The pertinent portion of the Commission's "Rules and Regulations Governing the Filing, Content, Posting, and Other Matters Pertain-

ing to Tariffs of Public Utilities Other Than Common Carriers (1962)" reads as follows:

"5. Upon the filing and posting of new tariffs or supplements to tariffs making increases in rates, notice thereof shall be given to the public in the following manner:

(a) by posting in offices

(b) by written or printed notice."

plaintiff resides, including the Philadelphia Evening Bulletin,[4] which plaintiff Zucker admittedly subscribes to and reads daily, carried articles discussing Bell's filing with the Commission and the proposed charges for private number service. The fact that F. Donald Zucker and Harry J. Barton may have been personally unaware of Bell's intention to file for changes and increases in rates, despite the utilization of numerous and varied procedures reasonably calculated, under all the circumstances, to inform the rate-paying customers of such filing, cannot, in and of itself, preclude a finding of "reasonable notice", and so render the Johnson Act inapplicable.

Plaintiffs also contend that various measures undertaken by defendants after the approval of the rates, could have been utilized prior to the rate approval to more effectively notify Bell's customers of the rates for unlisted telephone numbers. Even if we accept this position, we do not believe that defendants' subsequent utilization of more efficient measures of notification renders the challenged notice inadequate or unreasonable. Plaintiffs rightly do not suggest that, the personal service of process required in many judicial actions is essential in a rate case involving over 3 million customers. Neither do plaintiffs argue that each rate paying customer was entitled to receive by mail copies of the multiple page tariff sheets and the 32 page "notice" filed with the Commission. In view of the enormous complexity of the subject matter and the millions of people to be informed, the method of notice employed was adequate to inform plaintiffs that new rates had been filed and that the specifics of the proposed tariff would be made available to them on request.

Under the circumstances of this rate case, the court concludes that for jurisdictional purposes, the Commission's order of December 14, 1971, was promulgated "after reasonable notice and hearing" within the meaning of subsection (3) of the Johnson Act, 28 U.S.C. § 1342; more than that is not required.

### (4) State Court Remedy

■ There exists in the courts of Pennsylvania, available to plaintiffs, a plain, speedy and efficient remedy; accordingly interference with the Commission's order is barred by 28 U.S.C. § 1342. Diggs v. Pennsylvania Public Utility Commission, 180 F.2d 623 (3rd Cir. 1950); City of El Paso v. Texas Cities Gas Co., 100 F.2d 501 (5th Cir. 1938), cert. denied, 306 U.S. 650, 59 S. Ct. 592, 83 L.Ed. 1049 (1939); DeKalb County v. Southern Bell Tel. & Tel. Company, supra; Mountain States T. & T. Co. v. Public Util. Com'n of Colo., 345 F. Supp. 80 (D.Colo.1972); Mountain States T. & T. Co. v. Public Util. Com'n of Colo., 324 F.Supp. 857 (D.Colo.1971); Preston County Light & P. Co. v. Public Serv. Com'n of W. Va., supra; New Jersey Suburban W. Co. v. Board of Public U. Com'rs, 23 F.Supp. 752 (D.N.J.1938). The court's examination of the Pennsylvania Public Utility Law, 66 P.S. § 1101

---

4. On December 3, 1970, the Bulletin carried a report entitled "Bell Telephone Files Its Rates for $86 Million." A portion of the very extensive article read as follows:

"The Bell Telephone Co. of Pennsylvania filed application today for a statewide rate increase which would yield an additional $86.3 million a year.

Residential customers would pay anywhere from 25 cents to $3 more per month, depending on the type of service. But the company said the average would be about $1.20 a month.

The application was filed with the Public Utility Commission in Harrisburg this morning.

\* \* \* \* \*

'Private' Numbers

Bell also proposed to institute two new services called private and semi-private numbers with respect to listing in the directory, replacing the present 'nonpublished' offer.

Under the private number proposal, for $1 a month subscriber's number would not be published in any directory nor would it be available from an operator.

Under the semi-private proposal, the number would not be listed in any directory but could be obtained by calling the assistance operator. The monthly charge would be 50 cents."

et seq., reveals that the remedies available to plaintiffs are sufficient.

The Public Utility Law in substance requires that every rate of a public utility be "just and reasonable" [5] and makes unlawful unreasonable discrimination in rates, as well as provides that no public utility shall "as to rates . . . . subject any person . . . . to any unreasonable prejudice or disadvantage." [6] Plaintiffs have a right to file a complaint with the Public Utility Commission claiming improprieties in any rate determination.[7] Pennsylvania law further provides for a customer class action and empowers the Commission to order a refund of unjust or unreasonable rates.[8] If the Public Utility Commis-

sion decides adversely to plaintiffs, they may appeal to the Commonwealth Court.[9]

The Pennsylvania Public Utility Law contains an elaborate scheme for appellate review of orders of the Public Utility Commission; thus the remedy in the courts of Pennsylvania is plain, speedy and efficient within the meaning of subsection 4 of 28 U.S.C. § 1342.

■ Since all four conditions enumerated in the Johnson Act are satisfied in this case, this court is precluded, from exercising jurisdiction which would interfere with the Commission's order challenged herein. See, General Investment & Serv. Corp. v. Wichita Water Co., 236 F.2d 464 (10th Cir. 1956);

---

5. 66 P.S. § 1141.

6. 66 P.S. § 1144.

7. 66 P.S. § 1391.

8. 66 P.S. § 1153, provides in part as follows:
"§ 1153. Refunds.
(a) If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within two years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. In making a determination under this section, the commission need not find that the rate complained of was extortionate or oppressive. Any order of the commission awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. The commission shall state in any refund order the exact amount to be paid, the reasonable time within which payment shall be made, and shall make findings upon pertinent questions of fact."

9. 66 P.S. § 1431 provides:
"§ 1431. Appeals to courts; jurisdiction and practice.
(a) Within thirty days after the service of any order by the commission, unless an application for a rehearing may be pending, and then within thirty days after the service of the order refusing such application, or the

service of an order modifying, amending, rescinding, or affirming the original order, any party to the proceedings affected thereby may appeal therefrom. Such court is hereby clothed with exclusive jurisdiction throughout the Commonwealth for the purpose of hearing and determining any and all such appeals: Provided, That in case of an appeal from an award by the commission of compensation for damages resulting from an appropriation of real property under the provisions of this act, the appeal shall, in case any party is entitled to demand a jury trial under section eight of Article sixteen of the Constitution of this Commonwealth, be to the courts of the proper county thereof. In case of any such appeal from such an award where the commission shall have apportioned the amount thereof among, or shall have directed the payment thereof by, any public utility, municipal corporation or the Commonwealth, any such public utility, municipal corporation, or the Commonwealth may intervene and be heard in the trial of such appeal under such rules and regulations as the court shall prescribe. If an appeal be taken to any court, the case shall proceed in accordance with the practice and procedure made and provided in such cases.
(b) All appeals shall be by petition, setting forth specifically and concisely the error or errors assigned to the order of the commission, which petition shall be accompanied by a copy of the order appealed from, and shall also be accompanied by affidavit of the appellant, or of the agent or attorney of such appellant, that the appeal is not taken for the purpose of delay, but because the appellant verily believes that injustice has been done. Each error relied on must be specified particularly and set forth in a separate numbered paragraph of the petition."

Diggs v. Pennsylvania Public Utility Commission, supra; David v. New York Telephone Company, supra; Mountain States T. & T. Co. v. Public Util. Com'n of Colo., supra; Preston County Light & P. Co. v. Public Serv. Com'n of W.Va., supra; Pudlik v. Public Service Company of Colorado, 166 F.Supp. 921 (D. Colo.1958); General Telephone Company of Southwest v. Robinson, supra; New Jersey Suburban W. Co. v. Board of Public U. Com'rs, supra.

### III

### COMITY

 It is well-established that a federal court should abstain from exercising its jurisdiction in order to avoid unnecessary conflict with the administration by a state of its own affairs. Thus, assuming arguendo that 28 U.S.C. § 1342 does not deprive the court of jurisdiction that may otherwise exist, the court nevertheless concludes that jurisdiction should not be exercised, and that this case must be dismissed for reasons of comity. Alabama Public Service Comm'n v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Com'n, 465 F.2d 237 (3rd Cir. 1972); General Investment & Serv. Corp. v. Wichita Water, supra; Davis v. City of Little Rock, 136 F.Supp. 725 (E.D.Ark.1955); General Tel. Co. v. Robinson, supra.

In Burford v. Sun Oil Co., supra, a case involving an attack on the validity of proration orders in Texas oil fields, on the ground, among others, that the orders denied to Sun Oil due process of law, the court held that the federal district court should have dismissed the complaint. The court found that the exercise of the district court's jurisdiction would have interfered with a unified and comprehensive state scheme for regulating a complex industry and that the issues involved a specialized aspect of a complicated regulatory system of local law, which should be left to the local administrative bodies and courts. In Alabama Public Service Commission v. Southern Ry. Co., supra, the Supreme Court determined that the Johnson Act was inapplicable since the order challenged was not a rate order; nevertheless, the court decided that the district court should have declined to exercise its jurisdiction as a matter of sound equitable discretion. It was recognized that, in view of the strong underlying principle of avoiding "needless friction with state policies", the plaintiffs' rights should be "pursued through the state courts." 341 U.S. at 350, 71 S.Ct. at 768.

The doctrine enunciated in Burford and Alabama Public Service Commission has been followed by lower federal courts where the courts found the Johnson Act inapplicable. For example, in City of Monroe, Louisiana v. United Gas Corporation, 253 F.2d 377 (5th Cir. 1958), the court found the Johnson Act applicable, and accordingly dismissed plaintiff's action which sought to enjoin rates fixed by a state agency. In the course of its opinion the court stated:

"Of appellant's alternative primary contention, little need be said than that if, as the court did in the General Investment & Service Company case, 236 F.2d at page 468, we should concede without deciding that Sec. 1342 did not deprive the court of jurisdiction, we must still conclude under the cases cited, supra, in support of that contention, that the court should have denied plaintiff the right to proceed in the federal court. [citing Alabama Public Service Commission]." 253 F. 2d at 381.

In Davis v. City of Little Rock, supra, the court dismissed the action under the doctrine of comity after finding that the Johnson Act did not apply. The Court said:

"Although it does not appear that the ordinance here challenged was en-

acted after reasonable notice and hearing, it is obvious that the other three prohibitory conditions of the Act are present, and under such circumstances we think that the doctrine under discussion is particularly applicable, in the light of the clear Congressional policy expressed in the statute." 136 F.Supp. at 729–730 (Footnotes omitted.)

See, General Investment & Serv. Corp. v. Wichita Water Co., supra; Kansas-Nebraska Nat. Gas Co. v. City of St. Edward, Neb., supra; City of El Paso v. Texas Cities Gas Co., supra; and General Telephone Company of Southwest v. Robinson, supra, 132 F.Supp. at 46, where the court stated that "[s]ince in the instant case at least three of the four conditions of the Act have been met, we feel that the situation presented is one to which the rule of comity is peculiarly applicable."

The Court of Appeals for this circuit has recently applied the doctrine of comity in a case similar to the one at bar. In Allegheny Airlines, Inc. v. Pennsylvania Pub. Util. Com'n, supra, the court finding that the action posed a serious threat "to the orderly procedures and rules" of a state regulatory body, affirmed an order of this district court dismissing under the doctrine announced in *Burford* and *Alabama Public Service Comm'n*, supra, a challenge to an order of the Public Utility Commission. 465 F.2d at 243.

Based on the foregoing, it is clear that dismissal is required by reason of comity.

## IV

## CONCLUSION

For reasons here set forth, we dismiss plaintiffs' action on the ground that the court's jurisdiction is precluded by 28 U.S.C. § 1342 and on the ground that, even if the action were not so precluded, the court would nonetheless decline to exercise such jurisdiction, pursuant to the doctrine of comity.