**Richard DAVID, individually, as well as on behalf of others similarly situated, Plaintiff,**

v.

**NEW YORK TELEPHONE COMPANY, Defendant.**

**No. 72 Civ. 19.**

United States District Court,
S. D. New York.

April 4, 1972.

---

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant; Leonard Joseph, Harvey Kurzweil, New York City, of counsel.

Bradley B. Davis, New York City, for plaintiff.

PALMIERI, District Judge.

The defendant moves for dismissal of this action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b) (6), Fed.R.Civ.P., and for lack of jurisdiction over the subject matter, pursuant to Rule 12(b) (1), Fed.R.Civ.P. The parties concede that no genuine issues of fact are present and that the controversy can be disposed of by way of summary judgment.

Alleging jurisdiction under the Civil Rights Act, 28 U.S.C. § 1343, the plaintiff brings this action on behalf of himself and purportedly on behalf of all other "unemployed persons without financial resources who require telephones installed in their residences in New York State." He alleges that when he requested residential telephone service on or about August 1, 1971, defendant New York Telephone Company (Company) asked him to post a $100 deposit and that he was told that the "ordinary" deposit was $25. Allegedly the $100 deposit was requested because he was unemployed and without financial resources. This requirement as a condition to obtaining telephone service, plaintiff urges, "solely because he is unemployed and without financial resources, while other persons may obtain a telephone with a deposit of only $25 denies plaintiff the equal protection of

the law under the Fourteenth Amendment of the United States Constitution." His complaint further insists that this alleged denial of equal protection is "pursuant to State action, to wit: approval of tarrifs [sic] allowing these discriminatory deposits by the Public Service Commission." Plaintiff thus seeks injunctive and declaratory relief, specifically praying for (1) an "order restraining and enjoining defendant from demanding discriminary [sic] deposits for telephone service from plaintiff and others similarly situate [sic] based upon employment status or other economic condition," (2) an "order directing defendant to install telephone service for plaintiff provided he post a deposit the same as that which would be required under the tariffs were he employed and with financial resources," and (3) an "order declaring any tariffs which discriminate between telephone deposits on the basis of economic wealth or employment in violation of the equal protection clause."

In substance, plaintiff claims he has been deprived of the freedom of speech secured by the First Amendment because he has been frustrated in his attempt to procure the use of a telephone facility; that the defendant Company discriminates unconstitutionally by making a distinction "between persons who must make a deposit and those who need not"; and finally, he suggests, "the basic [tariff] rule itself . . . discriminates against poor people." In essence, plaintiff's allegations rest upon a $100 deposit requirement imposed, he says, because he was unemployed and without financial resources, despite the existence of an alleged "ordinary" deposit of only $25.

■ These contentions have no basis in fact. There is no ordinary deposit of $25; and the deposit of $100 was not required because plaintiff was unemployed and without financial resources. An affidavit by Mr. Robert Manner, Assistant Vice President of defendant Company, demonstrates the Company's deposit policies. The Company requires a subscriber to post a deposit equivalent to two months' estimated charges if he cannot establish his credit to the satisfaction of the Company. Deposits are not favored and are dispensed with whenever possible. When a deposit is required the amount is determined on the basis of uniform rules, and does not depend on a subscriber's employment or economic status. If a subscriber has had prior telephone service and a deposit is required because, for example, he has been delinquent, the deposit will be the equivalent of the subscriber's average bill for two months' service. It does not matter whether that subscriber is or is not employed at that time nor what his economic status might then be. If a subscriber has not had prior telephone service, the deposit amount is based upon the average two months' bill of all residential subscribers in the Company's central business office district in which the applicant resides. Not having had previous telephone service since 1967, plaintiff was treated as a new applicant to whom these latter provisions applied.

If plaintiff were a residential subscriber, the minimum and average deposit requested in the central business office including his address was $50 on August 1, 1971, when he sought to obtain service. He would then have been required to post that amount of deposit. Plaintiff stated in an answer to an interrogatory that he was a "self-employed craftsman." As such he would not have been able to obtain residential service and would have been treated as an applicant for business service at the higher business rates. In the central business district where plaintiff is located the minimum deposit for business telephone service was $100—the amount plaintiff claims was requested of him. In any event, it is clear that the deposit requirement has no relationship to plaintiff's employment or lack of employment, or his economic status.

It should be noted that the New York Public Service Law sets out a comprehensive scheme of administrative remedies with respect to the regulation of

telephone rates and deposit tariffs which are within the jurisdiction of the New York Public Service Commission. See, e. g., N.Y.Public Service Law, McKinney's Consol.Laws, c. 48, §§ 94(2), 96(3), 97(1), 97(2). Any determination is subject to state judicial review by virtue of a proceeding under Article 78 of the New York Civil Practice Laws and Rules. It is enough to note that plaintiff here has not sought to avail himself of any of these administrative remedies.

█ It should also be observed that this complaint may be dismissed because, under the Johnson Act, 28 U.S.C. § 1342,* this court has no jurisdiction. That act applies if its four requirements are met (see note at end of opinion). Plaintiff himself asserts a "repugnance" to the Federal Constitution in that his First Amendment right has been violated; the deposit tariff does not interfere with interstate commerce; the New York Public Service Commission's order regarding telephone deposit tariffs had been promulgated with "reasonable notice and hearing"; and Article 78 of the New York Civil Practice Laws and Rules accords a "plain, speedy and efficient remedy" in the New York courts. The four requirements of the Johnson Act appear thus to be satisfied and to preclude federal jurisdiction of plaintiff's alleged grievances.

█ Having failed to avail himself of the ample state remedies available to him the plaintiff cannot invoke the Civil Rights Act, 28 U.S.C. § 1343(3), as he seeks to do here. Eisen v. Eastman, 421 F.2d 560, 567, 568 (2d Cir. 1969). This holding remains valid in the respect for which it is cited notwithstanding the recent express rejection by the Supreme Court in Lynch v. Household Finance

Corp., 405 U.S. 538, 542, 92 S.Ct. 1113, 1117, 31 L.Ed.2d 424 (1972) of "the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction."

In view of all that has been said, the plaintiff has failed to state a claim upon which relief can be granted. Defendant's motion for dismissal of the complaint on this ground is accordingly granted. Rule 12(b) (6), Fed.R.Civ.P.

It is so ordered.

---

* 28 U.S.C. § 1342 provides:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance

of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.