HARTFORD CONSUMER ACTIVISTS ASSOCIATION and Gail Irwin

v.

Howard E. HAUSMAN et al.

Civ. No. H 74–216.

United States District Court,
D. Connecticut.

Aug. 21, 1974.

Alexander Goldfarb, Corp. Counsel, City of Hartford, Peter G. Boucher, Barry Zitzer, Asst. Corp. Counsels, Hartford, Conn., for plaintiffs.

Frederick D. Neusner, Asst. Atty. Gen., State of Connecticut, Hartford, Conn., for Public Utilities Commission.

Palmer S. McGee, Jr., Robert M. Stephan, Day, Berry & Howard, Hartford, Conn., for Hartford Elec. Light Co.

RULING ON MOTION TO DISMISS OF DEFENDANT, THE HARTFORD ELECTRIC LIGHT COMPANY

CLARIE, Chief Judge.

Plaintiff Hartford Consumer Activists Association (hereinafter the Association) is an unincorporated association of residents and taxpayers of the City of Hartford who, by their own description, are dedicated to the securing of fair and reasonable public utility rates and services. Plaintiff Gail Irwin is a resident and taxpayer of the City of Hartford and a regular consumer of electricity provided by defendant The Hartford Electric Light Company (HELCO). Defendants, Hausman, Thatcher, and Hadden are Commissioners of the Public Utilities Commission of the State of Connecticut (PUC). Defendant HELCO is a public service company franchised to provide electricity and electrical services within the Greater Hartford Metropolitan Area.

The plaintiffs challenge on due process grounds, the PUC's granting of an interim rate increase to defendant HELCO, and secondly, the procedures by which the hearings on the permanent increase are being conducted. The plaintiffs have moved for a preliminary injunction restraining defendants (1) from collecting or permitting the collection of interim rates and (2) from enforcing the PUC rule that plaintiffs pre-file certain direct testimony and exhibits before participating as intervenors in the Commission hearings. Defendant HELCO has moved to dismiss the complaint. The latter motion is granted and the complaint is dismissed against all defendants for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. Rule 12(b)(6).

The facts of the case can be stated very simply. On April 4, 1974, HELCO filed with the PUC its notice of intention to file amended rate schedules proposing an increase in its electric and gas rates. On May 6, 1974, HELCO filed with the Commission a proposed amendment to its existing schedule of rates which was designed to produce increased revenues of $23,045,000 on an annual basis. HELCO submitted with its application exhibits and testimony supporting the requested increase. The PUC initially suspended the proposed amendment and its effective date pending investigation. However, on May 22, 1974, the PUC issued an Interim Finding and Order modifying its earlier order of suspension and allowing HELCO to increase its annual revenues by $13,300,000 on an interim basis, pending the Commission's decision on the Company's application. This Interim Commis-

sion Action was based on the evidence submitted by HELCO and the PUC's determination that the additional revenues were necessary immediately, in order that HELCO could maintain its ability to issue additional securities and consequently meet its continuing service requirements.

The plaintiffs were among those who sought to intervene in the PUC hearings on HELCO's application. In a letter dated July 1, 1974, granting the plaintiff-Association's request to intervene, the PUC stated that it would be necessary that it furnish the names of witnesses and pre-file their testimony with the proposed exhibits, prior to the Association's presentation of such evidence. At the opening of the hearings on July 8, 1974, the Chairman of the PUC set July 22, 1974, as the deadline for the pre-filing of the intervenor's testimony, but offered to consider any reasonable requests for extending the time within which they might comply.

### Interim Rate Increase

The plaintiffs direct their attack against the granting of the interim rate increase on two basic grounds: (1) that the PUC procedures used in granting the Interim Order deny them a full hearing in violation of the Due Process Clause of the Fourteenth Amendment; and (2) that said Commission was not authorized by the state statutes in effect when the increase was granted.

■ The Court recognizes that the provisions of the Johnson Act, 28 U.S.C. § 1342, severely limit its jurisdiction to enjoin the operation of state utility rate orders. That Act provides as follows:

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State."

■ The first two conditions requiring application of the Johnson Act are met here, since jurisdiction is premised on Federal Constitutional grounds and no interferences with interstate commerce has been alleged.

As to the condition that a hearing should first have been held after reasonable notice, the plaintiffs concede that no prior hearing would have been required had the PUC allowed the entire rate increase to go into effect pending its investigation and the holding of a public hearing. Such procedure is authorized by Conn.Gen.Stat. § 16–19.[1] Three-judge courts in at least two districts have recently considered constitutional challenges to statutes allowing interim rate increases in terms similar to § 16–19. Both courts rejected the claim that due process requires a hearing before an interim utility rate increase can go into effect, provided an adequate refund bond was filed to assure a return to consumers of any overpayment, in the event that the ultimate rate established warranted reimbursement. Holt v. Yonce, 370 F.Supp. 374 (D.So.Car. 1973); aff'd, 415 U.S. 969, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974); Sellers v. Iowa Power and Light Co., 372 F.Supp.

---

1. Section 16–19 provides in pertinent part: " . . . in the discretion of the commission, any amendment increasing any rate may become effective upon the filing by the company with the commission of assurance satisfactory to the commission . . . of the company's ability and willingness to refund to its customers such amounts as the company may collect from them in excess of the rates fixed by the commission in its finding or fixed at the conclusion of any appeal taken as a result of a finding by the commission."

1169 (S.D.Iowa 1974); *also see*, Brown v. Hausman, Civil No. 15,081 (D.Conn. June 21, 1972) (interim bus fare increase).

■ The plaintiffs, however, challenge the authority of the PUC to allow an interim increase of only a portion of the amount requested by defendant-HELCO. To the extent that this challenge is based on a claim to a hearing prior to the granting of the interim increase, the Court sees no difference between the granting of a partial or a full interim increase. Certainly the greater authority includes the lesser, even though the specific findings in the latter procedure are designed to simply maintain the status quo. Indeed, the fact that the PUC allowed only a portion of the increase to go into effect indicates a sensitivity and concern that the public not be required to pay any more than the minimum necessary to ensure the viability of the Company, pending a final determination of the fairness of the proposed rate change. The same factors which have prevented courts from imposing a prior hearing requirement in the case of a full interim increase are operative here; the increase is provisional, subject to full refund with interest, and the merits of any final increase will be determined after a public hearing. *See, Holt* and *Sellers, supra.*

■ Nor is there any merit to plaintiffs' claim—assuming, *arguendo*, that this Court has jurisdiction to reach the issue—that the partial interim increase was not authorized by state statute. Conn.Gen.Stat. § 16–19 as amended by P.A. 74–216, effective July 1, 1974. The plaintiffs rely on this amendment to support their claim that the pre-amendment § 16–19 did not authorize the action taken by the PUC in this instance.

The amended statute, after repeating the language of the former section relating to the power of the PUC to make investigations of rate schedules or proposed amendments submitted by utilities, adding the following language:

" . . . and [the commission] *shall,* in the case of a proposed amendment increasing the rate schedule of a *gas or electric company,* make such investigation and *hold at least one public hearing* thereon, provided the commission *may approve without public hearing an interim rate increase under bond and subject to refund with interest if the rate approved after hearing is less than the interim rate* and provided further the commission may, in its discretion, hold such hearing or hearings upon any increase in the rates charged by a gas or electric company resulting from the application of a fuel cost adjustment or purchased gas adjustment clause pursuant to section 4 of this act." (emphasis added).

Prior to the amendment, the investigation (except where requested by the State) and public hearing had been discretionary with the PUC. The effect of the amendment is to make them mandatory before *final* approval of any amended rate schedule filed by a gas or electric company. Contrary to plaintiffs' contention, the inclusion of the clause allowing the approval of interim rate increases without a hearing does not establish the proposition that interim increases were impermissible under the former language of the statute. Instead, the clause operates as a proviso which exempts such interim increases from the requirement (imposed for the first time by the amendment) of an investigation and hearing prior to final PUC action on a gas or electric rate increase. Thus, the "reasonable notice and hearing" provision of the Johnson Act offers the plaintiffs no escape from that Act's mandate against federal interference with the interim order itself, since there is no constitutional or statutory requirement of a hearing prior to such order.

Even passing over the hearing issue, the Johnson Act poses a further barrier to the Court's intervention with its equitable powers, since it appears that a

"plain, speedy and efficient remedy" in regard to the interim order is available to the plaintiffs in state court. Conn. Gen.Stat. § 4–183(a), the judicial review provision of Connecticut's Administrative Procedure Act, provides in pertinent part:

"A preliminary, procedural or intermediate agency action or ruling is immediately reviewable, if review of the final agency decision would not provide an adequate remedy."

Indeed, pursuant to this provision, the City of Hartford, on May 29, 1974, filed a petition for review of the PUC's Interim Finding and Order, raising substantially the same issues which plaintiff seeks to raise in this suit with respect to the interim rate order.[2]

On June 19, 1974, the Connecticut Court of Common Pleas, O'Brien, J., issued a memorandum of decision denying the City's application for a stay of the partial interim increase.[3] City of Hartford v. PUC and HELCO, No. 111332 (C. P. Hartford County, June 19, 1974). To the extent that the denial of a stay operated as a "final judgment" of the Court of Common Pleas, appeal to the State Supreme Court is available under Conn.Gen.Stat. § 4–184. On the other hand, if the appeal from the interim order is still pending before the Court of Common Pleas, any order of this Court might well operate as a stay of state court proceedings in contravention of the federal anti-injunction statute, 28 U.S.C. § 2283, which provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its juris-

diction, or to protect or effectuate its judgments."

■ Although the United States Supreme Court has held that suits under 42 U.S.C. § 1983, as this one purports to be, may in some cases come under the "expressly authorized" exception to § 2283, it remains clear that even in § 1983 actions a federal court must continue to follow "the established principles of equity, comity and federalism." Gibson v. Berryhill, 411 U.S. 564, 573, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973); Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Under the circumstances of this case, not only the principles of equity, comity and federalism, but also the clear intent of the Johnson Act, preclude this Court from imposing any restraint on the operation of the PUC's interim rate order.

■ Any other result would run counter to the "purpose of Congress [in the Johnson Act] to channel normal rate litigation into the State Courts while leaving Federal Courts free in the exercise of their equity powers to relieve against arbitrary action." City of Meridian v. Mississippi Valley Gas Co., 214 F.2d 525, 526 (5th Cir. 1954). Any federal intervention would be especially inappropriate, where the existence of its property interest on which plaintiffs premise their due process claim, discussed *infra*, is so speculative as to raise serious doubts whether the complaint presents the type of substantial federal question necessary to state a claim under 42 U.S.C. § 1983. *See*, David v. New York Telephone Co., 341 F.Supp. 944 (S.D.N.Y.1972), aff'd, 468 F.2d 632 (2d Cir. 1972), supplemented, 470 F.2d 191 (2d Cir. 1972).

---

2. The City charged that the interim order was "arbitrary, illegal, unreasonable, capricious, and in abuse of the discretion vested in the P.U.C." in that it was unauthorized by statute, constituted a pre-determination on the merits of the rate application and was an unconstitutional taking of property. Appendix A to Memorandum of the defendant HELCO.

3. Conn.Gen.Stat. § 4–183(c) provides:
"The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms."

### Procedural Aspects of the
### Rate Hearing

In addition to the plaintiffs' direct attack on the PUC's interim rate order, they contend that certain procedural aspects of the hearing on the full rate increase violated their right to due process. Specifically, they argue that by issuing its Interim Finding and Order, the PUC impermissibly shifted the burden of proof on the issue of the justness and reasonableness of the rates requested.[4] Secondly, the plaintiffs charge that the PUC's order that plaintiff-Association prefile its testimony and exhibits denied the Association the opportunity for a "full, fair and impartial hearing."

■ These two contentions of the plaintiffs do arguably lie outside the scope of the prohibitions of the Johnson Act, since no final "order affecting rates" has been entered and the claims themselves raise the question of whether the "reasonable notice and hearing" requirement will be met. Nevertheless, federal court interference in state administrative proceedings is not to be lightly undertaken, and this Court concludes that plaintiffs have stated no claim on which declaratory or injunctive relief can be granted.

The question of what, if any, procedural due process rights the plaintiffs are entitled to must first be analyzed within the parameters established by the Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 569, 577, 92 S.Ct. 2701, 2705, 2709, 33 L.Ed.2d 548 (1972):

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (footnote omitted).

■ Courts have yet to hold that a state agency's approval of a utility rate increase involves a deprivation of a customer's property interest, which is actionable under the Fourteenth Amendment. The three-judge court in Sellers v. Iowa Power and Light Co., *supra*, found that the plaintiffs there had "no property interest in existing rates which is protected by the Fifth and Fourteenth Amendments" and accordingly held "that plaintiffs are not entitled to a procedural due process hearing prior to a determination of the lawfulness of the proposed rate increase." 372 F.Supp. at 1172. In a similar case in this district involving a temporary bus fare increase pending a PUC hearing, the Court stated:

"In the first place, the 'deprivation' of property here is indirect at best and is more likely not a deprivation within the meaning of the Fourteenth Amendment . . . . It is by no means clear that customers have a right to procedural due process whenever a state agency permits an increase in the price of a commodity they wish, or even need, to purchase." Brown v. Hausman, Civil No. 15,081 (D.Conn. June 21, 1972) (Newman, J.).

Plaintiffs in the present case would distinguish such precedents on the grounds that the courts were dealing only with the claim to a hearing prior to an interim increase and that once the state agency, as the PUC has done here, has granted a hearing, it cannot proceed

---

4. Conn.Gen.Stat. § 16–22 provides:
   "At any hearing involving a rate, the burden of proving that a rate under consideration is just and reasonable shall be on the public service company."

to conduct the hearing in violation of the principles of due process. Even if the plaintiffs are entitled to minimal standards of due process at the PUC rate hearing, they have alleged no state of facts, which would constitute a denial of their due process rights.

■ First, the plaintiffs claim that the Interim Finding and Order evidenced a predetermination by the PUC of the merits of the rate increase both in violation of their rights to a fair hearing and of Conn.Gen.Stat. § 16–22. However, the Order makes clear that the partial rate increase was provisional only; it was subject to refund at 8% interest, and was intended solely to maintain HELCO's ability to issue additional securities and thus meet its continuing service requirements. The Order further indicates that consideration was given to the interests of consumers, as well as that of the Company; and it specifically states that the interim increase "does not constitute approval of any proposals of the Company as to rate changes and/or other matters that will be placed in issue in the investigation and in the public hearing." [5]

The plaintiffs have not made any claim that the PUC was an "unconstitutionally consituted" administrative body, see, Gibson v. Berryhill, supra, 411 U.S. at 577, 93 S.Ct. 1689, or that it was biased or had predetermined the issue before it, see, Kelly v. Board of Education, 159 F.Supp. 272 (M.D.Tenn.1958).

Rather, the PUC's action can be seen as in the nature of an interlocutory emergency order designed to maintain the status quo, until a final determination on the merits of the petition could be made.[6] The situation presented here is little different than that authorized under Rule 65, Fed.R.Civ.P., where the Court is granted judicial discretion to issue a temporary restraining order, with adequate bond; there is no suggestion that such action by the Court would constitute a prejudicial prejudgment bias on the issues or shift the burden of proof between the litigating parties. Absent a showing of direct and serious prejudice to some protectible interest of the plaintiffs, their burden of proof argument creates no basis for federal intervention at this stage of the state administrative process.

■ The plaintiffs' second procedural issue, the pre-filing requirement, must be dealt with in the light of the role accorded to the plaintiffs at the hearing and the precise scope of the pre-filing order itself. The plaintiffs were admitted as intervenors in the rate hearing pursuant to § 16–1–18 of the Administrative Regulations of the Public Utilities Commission. Section 16–1–19 of said Regulations gives the presiding officer at the hearing, broad discretion in determining the degree of involvement of intervenors. In view of the fact that the number of such intervenors is potentially unlimited, the PUC must complete its hearing and investiga-

---

5. Petitioners' Exhibit E. The PUC stated in part:

"We believe that the long range interests of consumers are best served by healthy utility companies making a fair profit. The modification of the suspension allowed herein will keep the company viable during the pendency of the Commission's investigation of the proposed amendment to the existing schedule of rates."

6. Among the "Findings of Fact" contained in the Interim Finding and Order were the following:

"The evidence also supports the conclusion that these additional revenues are the

minumum amounts that will result in the ability to issue bonds in mid-1975, under very optimistic assumptions as to the availability of internally generated funds and interest rates; that the Company must have these revenues immediately if it is to maintain its ability to issue additional securities which is necessary if the Company's ability to meet continuing service requirements is not to be impaired. This Interim Finding and Order authorizes a rate of return no higher than that provided for in the 1973 rate proceeding and purportedly maintains a status quo earnings capacity."

tion within specified time limits;[7] the Court cannot say that the PUC's procedural pre-requisites for the intervenors' participation in this case were unreasonable.

In its letter admitting the plaintiff-Association as an intervenor, the PUC stated that the Association would have "to furnish to the Commission both the names of the witnesses and pre-filed testimony and exhibits prior to the presentation of such evidence in behalf of the Association," with the time and circumstances of the pre-filing to be set by the presiding officer at the time of the hearing. The letter also expressed concern that the Association's testimony[8] should not duplicate that offered by the City of Hartford.[9] At the opening of the hearings on July 8, 1974, the Chairman of the Commission announced that all testimony and exhibits to be presented by any intervenors should be pre-filed within two weeks, but offered to extend the deadline upon request for a reasonable period.[10] Nothing in this restrictive ruling prohibited the offering of rebuttal evidence by the plaintiffs, in response to evidence educed through the cross-examination of HELCO witnesses during the hearings, without their fulfilling the pre-filing requirements.

In a "Post Hearing Supplement to the Memorandum of Law," filed July 17, 1974, after the hearing in this Court, the defendant PUC suggests that the pre-filing requirements would not apply to either of the plaintiffs, since neither proposes to offer testimony of such a "substantive, technical or expert nature" as to be affected by the pre-filing order. While the record before the Court at the time of the hearing did not disclose this limitation on the order, the Court accepts counsel's limitation, as a statement of the PUC's policy with regard to the procedures at its rate hearings. The Court notes, however, that any pre-filing requirement which is not so limited to "substantive, technical or expert testimony" and which is imposed as an absolute precondition to the participation of any intervenor admitted to a rate hearing, might well raise more serious due process questions.

In any event, no such absolute precondition was imposed here. The rate hearings began, in accordance with § 16–1–39 of the State Agency Regulations, with the cross-examination by PUC members and by intervenors admitted for that purpose, of the witnesses of defendant HELCO. Such participation was not conditioned on the prior filing of testimony by intervenors. Furthermore, the entire pre-filed testimony of HELCO had been available for inspection and study by all interested parties since May 6, 1974.

There is no absolute right to present oral argument in an administrative hearing. *See*, United States v. Florida East Coast R. Co., 410 U.S. 224, 245, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); FCC v. WJR, 337 U.S. 265, 69

---

7. Conn.Gen.Stat. § 16–19 limits the period during which the PUC may suspend the effective date of a requested rate increase to one hundred and fifty days. The PUC suspended the effective date of HELCO's proposed amendment on May 8, 1974.

8. The Association's membership was represented to include the Mayor and several members of the Court of Common Council of the City of Hartford; and the individual plaintiff, Gail Irwin, was described as the secretary to the City Corporation Counsel, who prepared the plaintiffs' papers and

argued the case before the Court. *See* Petitioner's Exhibit C.

9. Petitioner's Exhibit C. Section 16–1–40 of the Regulations of Connecticut State Agencies states:

"To avoid unnecessary cumulative evidence, the commissioners or the presiding officer may limit the number of witnesses or the time for testimony upon a particular issue in the course of any hearing."

10. Respondents' Exhibit 1, Transcript of PUC Hearing, at 29, 36.

S.Ct. 1097, 93 L.Ed. 1353 (1949). The extent to which a party is entitled to participate in any hearing will depend on such factors as the nature of the interests involved and the sanctions to be imposed. It is important to note, that what is involved in the present case is not an across the board denial of an opportunity to present oral evidence. Rather, the pre-filing requirement means only that certain evidence must be submitted in written form before being presented at the hearing. The purpose for this requirement is to give the PUC and its staff sufficient time to study complex testimony, whose very nature makes it subject to the rule, while at the same time encouraging the hearings to proceed to an orderly conclusion within the statutory time deadline.[11]

Whatever the merits of plaintiffs' claims to due process rights at the PUC hearing, any attempt to define the extent of that due process would have to involve a weighing of the governmental function involved against the plaintiffs' private interest. *See*, Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). A prompt and fair determination on the requested rate increase by HELCO is in the interest of both the consumer and the utility. When the Public Utilities Commission, as the state agency charged with the duty of accommodating these interests for the overall public benefit, decides that the pre-filing of technical, substantive and expert testimony is necessary to the efficient administration of that duty, this Court cannot find their decision to be arbitrary or so unreasonable as to violate the Due Process Clause of the Fourteenth Amendment. Accordingly, the Court grants defendant's motion to dismiss against all defendants for failure to state a claim upon which relief can be granted. So ordered.

11. Id., at 28, 33.