Rose **KLOTZ**, on behalf of herself and all other stockholders of Consolidated Edison Company of New York, Inc., Plaintiffs,

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.**, et al., Defendants.

No. 74 Civ. 2911.

United States District Court, S. D. New York, Civil Division.

Dec. 23, 1974.

Howard S. Klotz, New York City, for plaintiffs; Malcolm S. Taub, New York City, of counsel.

**580**

Cahill, Gordon & Reindel, New York City, for defendants, Con Ed & Charles F. Luce; William E. Hegarty, Warren H. Colodner, Russell T. Lewis, New York City, of counsel.

Adrian P. Burke, Corp. Counsel, New York City, for defendants; Samuel J. Warms, Robert J. Metzler, II, New York City, of counsel.

Peter H. Schiff, Albany, N. Y., for Public Service Commission of the State of New York; David Schechter, New York City, of counsel.

WHITMAN KNAPP, District Judge.

Plaintiff, the owner of 1000 shares of Consolidated Edison common stock, brings this derivative action against the members of the Public Service Commission of the State of New York (the PSC) and the Finance Administrator of the City of New York to obtain on behalf of Con Edison $1.5 billion in damages and certain declaratory relief with respect to the acts of the defendants. Con Edison and its trustees—most of whom have not been served—are named as nominal defendants in the action.

Plaintiff bases this action on the Fourteenth Amendment to the Constitution, and on the Civil Rights statute, 42 U.S.C. § 1983. In essence, she alleges that as a result of certain illegal action by the defendants, Con Edison has been placed in a precarious financial position, has been forced to omit the payment of a quarterly dividend on its common stock, and has experienced a drastic decline in the market value of such stock. The core allegations are that the Public Service Commissioners, acting under color of state law, have followed and continue to follow a confiscatory rate-making policy with respect to Con Edison. Plaintiff claims that the rates which the defendant commissioners allow Con Edison are "inadequate for it to earn a reasonable rate of return on the value of its property" (Complaint, ¶ 13), and thus the commissioners have deprived the corporation of the use of its property without just compensation (Complaint, ¶ 18). Besides damages, plaintiff seeks a declaration that the rate-making policies of the PSC violate the Fourteenth Amendment.

Plaintiff's claim against the City Finance Administration is somewhat analogous to its claim against the commissioners. Although she does not identify the precise local tax she is challenging, she alleges upon information and belief that approximately one-third of Con Edison's billings represent a tax on its customers "which defendant Con Ed surreptitiously collects for New York City" (Complaint, ¶ 25). Furthermore, she charges that the unidentified tax affects only Con Edison, is invidiously discriminatory, and therefore deprives Con Edison of property without due process of law (Complaint, ¶¶ 25–29). In addition, she alleges that the Public Service Commissioners permit Con Edison to collect this discriminatory tax, and that this tax is a significant factor in the PSC's confiscatory rate-making policies and procedures. With respect to the finance administrator, plaintiff seeks a declaration that this unspecified tax is unconstitutional.

As already noted, Con Edison and its trustees are named as nominal defendants. Plaintiff does not allege any independent cause of action against the corporation or its directors. Thus, there are no allegations of fraud, self-interest or double-dealing. Plaintiff states, as is appropriate, that she duly demanded of the trustees that they institute suit in the name of the corporation and that this demand was refused. Her complaint does state that the trustees of Con Edison have followed "a long standing and continuing policy of quiet accommodation and appeasement of state and local officials" (Complaint, ¶ 41), and that the trustees "have yielded without resistance in general to the aforesaid illegal confiscatory rate-making policies and procedures, and, in particular, to the aforesaid individously [sic] discriminatory tax" (Complaint, ¶ 42).

It is, of course, axiomatic that in a derivative action, the claims which

the complaint presents to the court are not plaintiff's own, but rather the corporation's. Plaintiff cannot have any greater rights than would be accorded the corporation. Thus, if the complaint is dismissed as to the PSC and the City Finance Administration, it would be dismissed in its entirety.

All of the defendants in this action—including Con Edison and its chairman—have filed motions to dismiss the complaint. For the reasons stated below, the defendants' motions should be granted and the complaint should be dismissed in its entirety. This conclusion is based on two independent legal theories, which will be treated separately.

## I. *Plaintiff Lacks Standing to Prosecute this Action*

Defendants Consolidated Edison and its chairman Charles Luce move to dismiss the entire complaint on the ground that plaintiff lacks standing to prosecute this action. These defendants maintain that the decision whether to institute this action lies solely within the business judgment of Con Edison's management and trustees. These defendants contend that since plaintiff has not claimed that the management and trustees have been guilty of improper motive or bad faith in failing to bring an action against the other defendants, the business judgment rule would deprive plaintiff of standing in this matter.

It is beyond dispute that normally the decision of corporate directors whether or not to assert a cause of action held by the corporation rests within the sound business judgment of the management. This principle was enunciated by Justice Brandeis for a unanimous Supreme Court in United Copper Securities Co. v. Amalgamated Copper Co. (1917) 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119. In that case, the directors of a corporation had refused to bring an antitrust action against a third party. The court stated (at 263–264, 37 S.Ct. at 510):

> "Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment . . . ."

Indeed, if the rule were otherwise, any stockholder, no matter how small his interest, could usurp the authority of those who have been chosen to manage the corporation. As the Third Circuit declared in Ash v. International Business Machines, Inc. (3rd Cir. 1965) 353 F.2d 491, 493, cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531:

> ". . . a stockholder's derivative action, whether involving corporate refusal to bring antitrust suits or some other controversial decision concerning the conduct of corporate affairs, can be maintained only if the stockholder shall allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way."

See, also Hawes v. City of Oakland (1881) 104 U.S. 450, 26 L.Ed. 827; Swanson v. Traer (7th Cir. 1957) 249 F.2d 854; Stadin v. Union Electric Co. (8th Cir. 1962) 309 F.2d 912, cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L. Ed.2d 415; Kemper v. American Broadcasting Cos. Inc. (S.D.Ohio 1973) 365 F.Supp. 1272; Miller v. American T & T Corp. (E.D.Pa.1973) 364 F.Supp. 648; Issner v. Aldrich (D.Del.1966) 254 F.Supp. 696.

Applying these principles to the case at bar leads inexorably to the conclusion that plaintiff lacks standing to prosecute this action. Her complaint

is barren of allegations that the directors of Con Edison have breached their fiduciary duty or that they stand in any sort of dual relationship so as to be unable to exercise unprejudiced judgment. The complaint merely accuses the trustees of following a policy of "quiet accommodation and appeasement of state and local officials" and of having "yielded, without resistance" to the claimed illegal confiscatory rate-making policies and procedures. Such charges are not enough to avoid the bar of the business judgment rule. As Con Edison indicated in its letter to plaintiff rejecting her demand that the corporation institute suit on its own behalf, the directors felt that litigation at this time would be counter-productive, especially since Con Edison had applied to the PSC for another rate increase. Rather than bring a lawsuit with a small probability of success, the directors, exercising their judgment, felt that a better approach would be to make more frequent rate applications to the PSC. In the absence of allegations of fraud, self-interest, or other misconduct of a breach of trust nature, this court should not at the instigation of one shareholder interfere with that judgment of the corporate officers.

While not arguing with the general theory of the business judgment rule, plaintiff maintains that this action fits within an exception to the rule which, plaintiff claims, permits shareholders to bring actions against public officials. She relies exclusively on an opinion by Chief Justice Hughes in Ashwander v.

Tennessee Valley Authority (1936) 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, and the cases cited therein. For the reasons stated below, we find Chief Justice Hughes' opinion inapplicable to the situation at bar.

*Ashwander* involved an attempt by preferred stockholders of an Alabama electric utility to enjoin the performance of a contract between the utility and the TVA on the ground that the TVA's activities were beyond the constitutional power of the federal government. The federal district court annulled the contract and granted some injunctive relief. The Circuit Court of Appeals reversed, finding the TVA's activities to have been authorized by a statute passed pursuant to Congress' powers under the War and Commerce Clauses of the Constitution. The *Ashwander* case, therefore, represented the Supreme Court's first opportunity to rule upon the constitutionality of the TVA's sales of electrical power.

While eight of the nine justices were in agreement that the Circuit Court should be affirmed,[1] four of the eight (Justices Brandeis, Cardozo, Roberts and Stone), concurring in an opinion by Mr. Justice Brandeis, felt that the Court should not reach the constitutional question because the business judgment rule deprived the plaintiffs of standing to sue. This opinion relied primarily on United Copper Securities Co. v. Amalgamated Copper Co., *supra*, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 and Hawes v. Oakland, *supra*, 104 U.S. 450, 26 L.Ed. 827,[2] and included a long discussion dis-

---

1. Justice McReynolds dissented in an opinion dealing with the merits of the constitutional claim, thus making the Hughes opinion the decision of the court.

2. In Swanson v. Traer (1957) 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221, the Supreme Court—twenty-one years after *Ashwander* —noted that the classical description of those situations where a stockholder may sue on behalf of his corporation was contained in Hawes v. Oakland. Thus, at 116 of its opinion the *Swanson* court quoted *Hawes*:

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;
Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholdres;
Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

tinguishing nearly all of the cases relied upon by the Chief Justice with respect to standing.[3]

The other four judges who favored affirmance preferred to decide the constitutional questions involved. In his opinion Chief Justice Hughes did not dispute the validity of the business judgment, but rather found it inapplicable, saying (297 U.S. at 319–320, 56 S.Ct. at 470):

"The illegality may be found in the lack of lawful authority on the part of those with whom the corporation is attempting to deal. Thus, the breach of duty may consist in yielding, without appropriate resistance, to governmental demands which are without warrant of law or are in violation of constitutional restrictions. The right of stockholders to seek equitable relief has been recognized when the managing board or trustees of the corporation have refused to take legal measures to resist the collection of taxes or other exactions alleged to be unconstitutional (Dodge v. Woolsey, 18 How. 331, 339, 340, 345, [15 L.Ed. 401]; Pollock v. Farmers' Loan & Trust Company, 157 U.S. 429, 433, 553, 554, [15 S.Ct. 673, 39 L.Ed. 759]; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 10, [36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713]) . . . . The remedy has been accorded to stockholders of public service corporations with respect to rates alleged to be confiscatory Smyth v. Ames, 169 U.S. 466, 469, 517 [18 S.Ct. 418, 42 L.Ed. 819]; Ex parte Young, 209 U.S. 123, 129, 130, 143 [28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764]. The fact that the directors in the exercise of their judgment, either because they were disinclined to undertake a burdensome litigation or for other reasons which they regarded as substantial, resolved to comply with the legislative or administrative demands, has not been deemed an adequate ground for denying to the stockholders an opportunity to contest the validity of the governmental requirements to which the directors were submitting."

Happily, it is not here necessary to choose between the wisdom of Chief Justice Hughes and that of Mr. Justice Brandeis. Accepting the Chief Justice's view as correct, it is not applicable to this action. Although the grand sweep of his opinion has language susceptible of broader interpretation, the essence of his holding is quite simple: to wit, a stockholder has standing to prevent his corporation from surrendering its property to public officials acting pursuant to a statute which is challenged as unconstitutional. In *Ashwander*, the actions of the TVA were not attacked as unreasonable. Rather, the stockholders challenged the authority's right to act at all. An apt characterization of the *Ashwander* holding is found in Judge Dimock's opinion in Breswick & Co. v. United States (S.D.N.Y.1955) 134 F. Supp. 132, rev'd on other grounds (1957) 353 U.S. 151, 77 S.Ct. 763, 1 L. Ed.2d 726. Speaking for a statutory court, Judge Dimock observed (at 139):

"Where the question is that of unlawful usurpation of regulatory control *as distinguished from the reasonableness of regulatory action by an agency with conceded jurisdiction*, a stockholder has standing to attack an administrative order in which the corporate management has acquiesced even though he cannot show an interest other than a derivative one on behalf of the corporation." (emphasis added)

Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity."

Chief Justice Hughes did not refer to Hawes v. Oakland, in his opinion in *Ashwander*.

3. Insofar as Mr. Justice Brandeis did not find such cases readily distinguishable, he found them to be bad law which "should now be disapproved" (297 U.S. at 352, 56 S.Ct. 466).

In this case, there is no contention that there has been "usurpation of regulatory control" by officials purporting to act pursuant to an unconstitutional statute. On the contrary, the question here is whether the public defendants are exercising their "conceded jurisdiction" in an unlawful manner. It follows that *Ashwander* is inapplicable, and thus that plaintiff is without standing to maintain this action.

## II. *Plaintiff's Suit is Barred Under 28 U.S.C.A. §§ 1341 and 1342*

█ Even if plaintiff did have standing to prosecute this derivative action on behalf of Con Edison, her complaint against the PSC and the City Finance Administrator would still have to be dismissed for lack of jurisdiction, pursuant to 28 U.S.C. §§ 1341 and 1342. These statutes, coupled with the doctrines of equitable restraint, comity, and abstention—doctrines which have a peculiar applicability to cases such as the one at bar—reflect a strong congressional and judicial policy calling for the curtailment of federal court jurisdiction in the area of state taxing and rate-making regulation.

The two statutes involved are the Tax Injunction Act of 1937, 28 U.S.C. § 1341, and the Johnson Act of 1934, 28 U.S.C. § 1342. The sections provide as follows:

§ 1341. Taxes by States

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

§ 1342. Rate orders of State agencies

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A. plain, speedy and efficient remedy may be had in the courts of such State."

As their language makes clear, the interest of Congress was to limit the jurisdiction of federal courts in special areas where state sensitivity to federal court intervention was great.

In the present action, plaintiff is seeking a declaratory judgment that some unspecified local tax is invidiously discriminatory and thus unconstitutional. Similarly, she is seeking a declaration that the PSC rate-making policy is confiscatory and in violation of the Fourteenth Amendment. There can be little question that such relief is tantamount to an attack on the rate orders themselves.

Plaintiff contends that the above two statutes do not apply to the facts of her case. The argument is threefold: first, she maintains that 28 U.S.C. §§ 1341 and 1342 do not apply to a suit alleging a civil rights violation under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983; secondly, she contends that 28 U.S.C. §§ 1341 and 1342 do not apply to actions seeking only declaratory, as opposed to injunctive, relief; finally, she maintains that one of the crucial requirements of both acts are not met, namely that there is no "plain, speedy and efficient" remedy available under state law.[4] All of these contentions must be rejected.

█ First, it is beyond dispute in this circuit that the prohibition of 28

---

4. Insofar as 28 U.S.C. § 1342 applies, plaintiff does not contest, nor can it be open to question, that the requirements of subdivisions (1), (2) and (3) of that statute have been met.

U.S.C. § 1341, and therefore by analogy, 28 U.S.C. § 1342, is not avoided by basing the action on the civil rights provisions of 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. See, Hickmann v. Wujick (2d Cir. 1973) 488 F.2d 875, aff'g, D.C., 333 F.Supp. 1221, and American Commuters Association v. Levitt (2d Cir. 1969) 405 F.2d 1148, aff'g, D.C., 279 F.Supp. 40.

Secondly, we feel, as have other courts, that the Johnson Act and the Tax Injunction Act bar declaratory relief as well as injunctive relief.[5] See, e. g. Hickmann v. Wujick (S.D.N.Y.1971) 333 F.Supp. 1221, aff'd, 2 Cir., 488 F.2d 875; American Commuters Association v. Levitt (S.D.N.Y.1967) 279 F.Supp. 40, 2 Cir., aff'd, 405 F.2d 1148; Collier Advertising Service v. City of New York (S.D.N.Y.1940) 32 F.Supp. 870; Northern Natural Gas Co. v. Wilson (D.Kan. 1971) 340 F.Supp. 1126 (three judge court), aff'd, 405 U.S. 949, 92 S.Ct. 1170, 31 L.Ed.2d 227; City of Houston v. Standard-Triumph Motor Co. (5th Cir. 1965) 347 F.2d 194; cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466, and Wyandotte Chemicals Corp. v. City of Wyandotte (6th Cir. 1963) 321 F.2d 927. Although, concededly, the language of the two provisions do not encompass declaratory judgments, it would be disingenuous to deny that declarations of claimed rights such as the ones sought by plaintiff in this case, would have any other result than the enjoining, suspension or restraint of the collection of the tax or the operation of the rate order. A declaratory judgment would result in precisely the same interference and disruption of the state scheme that the long standing policy limiting injunctions was designed to avoid.

Just recently, the Supreme Court reaffirmed that the areas of state taxation administration and public utility regulation were to be treated specially by federal courts. In Steffel v. Thompson (1974) 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, Justice Brennan wrote in his majority opinion that in the area of state taxation, the Supreme Court had consistently held "that a preclusion of injunctive relief inevitably led to a denial of declaratory relief" (at 472, 94 S.Ct. at 1222). And, in his separate opinion in Perez v. Ledesma (1971) 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (which later became the basis for the majority opinion in Steffel), Justice Brennan, after stating the special considerations justifying federal non-interference in tax cases, had noted: "When Congress has wanted to protect particular categories of state business from anticipatory federal intervention it has known how to say so. See 28 U.S.C. §§ 1341, 1342." (at 129, n. 18, 91 S.Ct. at 699).

Even if declaratory judgments were held to be outside the ambit of the Johnson Act and Tax Injunction Act, the abstention doctrine enunciated in Great Lakes Dredge & Dock Co. v. Huffman (1943) 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, should be applied to this action. Although that case dealt specifically with the Tax Injunction Act, its logic is equally persuasive for cases under the Johnson Act of 1934.

In *Great Lakes,* plaintiff sought to have certain Louisiana taxes declared unconstitutional. No injunctive relief was sought. The state tax law provided a remedy in the form of an action for recovery of taxes paid. The Supreme Court, in affirming the judgment of dis-

---

5. It is likely that it is only the existence of the doctrine of Great Lakes Dredge & Dock Co. v. Huffman, see discussion *infra,* which has prevented a decision by the Supreme Court on whether a declaratory judgment is encompassed by 28 U.S.C. §§ 1341 and 1342.

The American Law Institute in its proposed revision of the jurisdictional statutes would specifically include declaratory judgments within the ambit of the prohibition of both sections.

missal below, stated (at 297–299, 63 S. Ct. at 1073):

> "It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states. . . . Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes.
>
>     \*    \*    \*    \*    \*    \*
>
> "It is true that the Act of Congress speaks only of suits 'to enjoin, suspend, or restrain the assessment, levy, or collection of any tax' imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure."

The *Great Lakes* doctrine has been reaffirmed continuously by the Supreme Court, most recently in Steffel v. Thompson, *supra*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505.

While Great Lakes specifically dealt only with taxes, it is clear that the relief plaintiff here seeks against the PSC would be equally disruptive of the domestic policy of the state. Indeed, anything more disruptive could hardly be imagined.

■ The foregoing discussion leaves only the plaintiff's last argument to be considered—whether there is a "plain, speedy and efficient remedy" available to plaintiff under state law. Such a finding is necessary before this court can invoke either 28 U.S.C. §§ 1341 and 1342 or the doctrine of Great Lakes v. Huffman, *supra*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

■ A review of the procedures available to challenge both local taxes and PSC rate orders demonstrates beyond any doubt that there are adequate remedies available to plaintiff under New York law.

Although a review of specific remedies with respect to the challenged tax is hindered by plaintiff's failure to identify the tax in question, we find this deficiency to be inconsequential. Even if the elaborate review provisions set out in the Administrative Code of the City of New York for various local taxes did not apply, the New York courts have long held that a plenary suit may be brought in the state courts to challenge the constitutional invalidity or applicability of a local tax, despite an exclusive remedy provision in the local tax law. Richfield Oil Corp. v. City of Syracuse (1942) 287 N.Y. 234, 39 N.E.2d 219. The availability of a direct action for a declaratory judgment in the state courts is sufficient to satisfy the requirement for a plain, speedy and efficient state remedy for attacking any constitutional infirmities in the City's local tax laws. Hickmann v. Wujick (2d Cir. 1973) 488 F.2d 875.

Plaintiff also has an adequate remedy to challenge the constitutionality of the rate orders set by the PSC. Section 22 of New York's Public Service Law, McKinney's Consol.Laws, c. 48 permits "any corporation *or person interested therein*" (emphasis supplied) to apply for a rehearing in respect to any order made by the Public Service Commission.

Final rate orders made by the commission pursuant to § 66 of the Public Service Law are subject to judicial review in the New York State Supreme Court pursuant to Article 78 of the Civil Practice Law and Rules. Such a procedure accords plaintiff a "plain, speedy and efficient remedy" as to any rate order or decision rendered by the PSC which affects Con Edison. See, David v. New York Telephone Company (S.D.N.Y. 1972) 341 F.Supp. 944, aff'd, 468 F.2d 632, supplemented, 470 F.2d 191. The fact that the statute of limitations for challenging individual rate orders of the PSC under Article 78, CPLR, may have run does not result in the destruction of the plain and efficient remedy specified in the Johnson Act. Henry v. Metropolitan Dade County (5th Cir. 1964) 329 F.2d 780. To hold otherwise would effectively destroy the proscriptions of §§ 1341 and 1342 with respect to federal jurisdiction. Stockholders would then simply wait until the state statute of limitations expired, and then bring suit in the federal court.

Finally, in addition to the remedy under Article 78, plaintiff could also bring a direct action derivative suit in the state courts for the same declaratory relief sought here. Plaintiff argues that such a remedy is restricted by the requirement of the New York Business Corporation Law, McKinney's Consol. Laws, c. 4 that plaintiff furnish security for expenses in order to prosecute a derivative action. The Second Circuit, however, has considered this argument in American Commuters Association v. Levitt, *supra*, 405 F.2d 1148, and has rejected the contention.

To sum up, defendants' motions to dismiss the complaint in its entirety are granted. First, plaintiff lacks standing to prosecute this action, and secondly, even if plaintiff did have standing, jurisdiction would be barred under 28 U.S.C. §§ 1341 and 1342, or under the discretionary doctrine of Great Lakes v. Huffman (1943) 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

So ordered.